CAMPBELL *v.* WILLARD, et al.

In Banc. Mar. 28, 1949.

(39 So. (2d) 483)

Brandon, Brandon, Hornsby & Handy, for appellant.

**John S. Beach,** and **Engle, Laub, Adams & Forman,** for appellees.

Alexander, J.

Suit for wrongful death of Joseph Don Campbell was brought by appellant, the widow and sole heir, against a partnership doing business as Natchez Construction & Supply Company. The appeal is from a judgment for the defendants.

The fatal injuries were sustained by the deceased, who had climbed upon a structure erected by the defendants upon their lands for the purpose of collecting and washing gravel. The structure held three bins to contain gravel which was deposited therein by pumps. It was approximately thirty-four feet high. The bins were located atop piling to facilitate loading direct into trucks. While deceased was upon the structure, it collapsed. He was pinned beneath some of the debris and suffered injuries from which he died shortly thereafter.

The decisive legal and factual issue is whether deceased was at the time of his injury an invitee of the defendants or a mere licensee or trespasser. ██ █ It is elemental that if the status of deceased was that of an invitee, and his duties required or involved his presence upon the structure, the defendant owed to him the duty to use reasonable care to maintain the place in a reasonably safe condition. If, however, he was, either because he was an employee or, if such, his presence upon the structure was not required or anticipated, his status was that of a trespasser and the defendants owed to him no such duty, absent knowledge of his exposure to a known danger, except to refrain from wanton or wilful injury.

Had defendants' motion for a directed verdict been sustained, we would have been called upon to examine the conflicts in the testimony. In view of a submission of these issues to the jury and their verdict, we need in-

quire only whether the testimony was suffifficient to support the verdict.

Deceased owned, jointly with Jim Cotton, a gravel truck. On the morning of the injury, Floyd Willard, not a member of the partnership, came to the home of Jim Cotton requesting that he and deceased bring the truck to the gravel washer to haul gravel. Deceased was not present and lived elsewhere. Cotton brought the truck as requested. Later, deceased appeared at the scene. Gravel was not then being loaded. He sat down and removed his shoes, saying, according to some witnesses, that he ''believed he would go up there and see how much gravel was in the bins'', and by another witness: ''he was about five feet from me—and pulled off his shoes and rolled up his pants, laid his cigarette down and got up, and I definitely warned him, said 'don't get in the way' and he said he was not, he was going to play in the water a few minutes. Then he came back and picked up his cigarette, and I told him again, I said 'You boys stay out of the way, don't go around the structure nor the barge.' '' This witness did not see him mount the structure.

 The fact that there had been a general request and warning, both to deceased and others, to keep off the bins, seems sufficiently established as a jury issue. There appears no doubt that the presence of deceased upon the bins was not required, invited, or acquiesced in.

There is much testimony regarding the method of construction and the adequacy of the supporting timbers. In the absence of an actual or imputed knowledge by the defendants of an apparent or latent defect presaging collapse, they owed him no duty except that owed a trespasser. The bins had been operated under similar conditions for about a week. The jurors were privileged to take into account the probability that deceased's own weight was a contributing factor.

 Sufficient stress is lacking upon principles which the lay mind too often ignores, and which even in

judicial opinions are assumed rather than asserted. These are that injury of itself confers no legal right; that danger of itself is not negligence; and that negligence of itself is not liability. While negligence is the failure to use reasonable care, it remains an abstract concept until such negligence results proximately in injury to one to whom the obligation of due care is owed. These principles, as well as the issue as to the status, then and there, of the deceased, were submitted to the jury by proper instructions. The instructions on behalf of the plaintiff were generous, almost, but not quite to a fault. She accepted and presented the controlling principles embodied in the instructions requested by the defendants.

Lest the assignments directed to these instructions be deemed too summarily disposed of, we take occasion to say that the objections center about the requirement that (1) the deceased was there present at the actual or implied invitation of defendants; and (2) with the actual or implied invitation by defendants; and (3) for the defendants' benefit. It is urged that a probable or anticipated use of the premises would devolve a burden and duty upon defendants. Right or wrong, this latter element was embodied in plaintiff's instructions, and the jury rejected the privilege of applying it.

What we have said disposes of the case without need to review the denial of an instruction authorizing an award of punitive damages. Since no actual damages were awarded, the assignment is now without point. Nor need we examine the assignments directed to the nature and cause of the collapse. It is clear that there was no danger known to the defendants, and no wilful wrong. If there was no violation of a duty then and there owed to deceased,—and the jury so found—these matters become here irrelevant.

Affirmed.