PHILLIPS *v.* DELTA MOTOR LINES, INC., et al.

No. 40922 January 19, 1959 108 So. 2d 409

2

*Lee V. Prisock,* Jackson, for appellant.

*Young, Daniel & Coker,* Jackson, for appellees.

I. The question of appellees' negligence was properly submitted to the jury for determination. Alabama Great Southern R. Co. v. Daniell, 108 Miss. 358, 66 So. 730; D'Antoni v. Albritton, 156 Miss. 758, 126 So. 836; Gilchrist-Fordney Co. v. Price, 112 Miss. 20, 72 So. 836; Jackson City Lines v. Harkins, 204 Miss. 707, 38 So. 2d 102; Kirkpatrick v. Love, 220 Miss. 174, 70 So. 2d 321; Sec. 1455, Code 1942.

Kyle, J.

This case is before us on appeal by Mrs. Mary Jane Phillips, plaintiff in the court below, from a judgment rendered by the Circuit Court of Hinds County in favor of the Delta Motor Lines, Inc., and K. C. Foster, defendants in the court below, in an action for damages for personal injuries alleged to have been sustained by the appellant, when an automobile, which was owned by Mrs. Berdie Mae Stephens, and in which the appellant was riding as a guest, was struck by a truck owned by the appellee, Delta Motor Lines, Inc., and being driven by the appellee, K. C. Foster.

The accident occurred on May 15, 1956, at approximately 6:45 A. M. at the intersection of Broadmoor Drive and North State Street in the City of Jackson. The auto-

mobile in which the appellant was riding was proceeding northwardly along North State Street and had been brought to a stop at a red light at the intersection of Broadmoor Drive. The truck driven by K. C. Foster was proceeding northwardly on North State Street some distance behind the appellant's car; and as the truck approached the intersection and was about 150 feet to the rear of the automobile the driver applied his air brakes, which held for a "bit" and then failed completely. The driver of the truck cut to the left, in an effort to avoid striking the car, but the front bumper of the truck struck the left back fender of the automobile, causing minor damage to the automobile. The truck rolled about three feet farther and came to a stop. The appellant, who was riding on the left side of the back seat of the automobile at the time of the accident, proceeded to the plant, where she was employed, and made no complaint of any injury to the foreman or the registered nurse in charge of the first aid room at the plant. On September 18, 1956, the appellant gave a statement concerning the accident to one of the appellees' attorneys and a court reporter, in which she stated that she had not been hurt in the accident. She did not consult a doctor until November, 1956.

The appellant filed her declaration on January 3, 1957. The declaration contained two counts. The first count alleged acts of negligence on the part of the appellees as follows: That the appellee, K. C. Foster, was operating his vehicle at a reckless rate of speed; that he failed to keep a proper lookout for other vehicles; that he failed to keep his truck under proper control; and that he failed to sound his horn or give any warning of the approach of his vehicle prior to the collision. In the second count the appellant alleged that the truck was not equipped with brakes adequate to control the movements of the truck, as required by Section 8249, Mississippi Code of 1942, Recompiled. In their answer the ap-

pellees denied that the driver of the truck was guilty of negligence in the operation of the truck, as alleged in the plaintiff's declaration, and averred that the accident arose out of an emergency created by an unexpected failure of the truck's braking system.

The case was submitted to a jury under instructions granted by the court, and the jury returned a verdict for the defendants.

The appellant assigns the following errors as grounds for reversal of the judgment of the lower court: (1) That the court erred in refusing to grant the peremptory instructions requested by the appellant; (2) that the verdict of the jury was contrary to the overwhelming weight of the testimony; and (3) that the court erred in refusing to grant two instructions requested by the appellant relating to the alleged failure of the driver of the truck to operate his vehicle at a reasonable rate of speed and to have the truck under proper control, and the appellees' failure to have the truck equipped with two independent and effective brakes and a suitable horn or signal device.

In view of the nature of the assignments of error, it is necessary that we give a brief summary of the testimony.

Dr. Thomas C. Turner testified as the first witness for the plaintiff. He stated that Mrs. Mary Jane Phillips came to his office on December 3, 1956, complaining of pain in her neck and right shoulder. He stated that "she related her symptoms to an automobile accident" which occurred on May 15, 1956. The doctor stated that he examined Mrs. Phillips, took X-rays and found signs, subjective of old neck strain, mild hypertrophic arthritis of the spine. There was a mild limitation in the forward bending of the neck, and a slightly more than mild limitation in bending the neck backward. The doctor found no evidence of the impairment of the nerves. Her symptoms consisted of limitations of movement of

the neck. The doctor's diagnosis was that she probably had a chronic neck strain, superimposed in a mild degree of hypertrophic arthritis in the neck, and the doctor recommended that she make use of a traction "to pull on the muscles and ligaments and allow her muscles to relax, and that she use a Thomas collar. Mrs. Phillips continued to have a moderate amount of pain, but it was apparently not enough to prevent her from carrying on her regular activities. The doctor stated that, when a patient complains of pain, the doctor does not have much to go on except what the patient tells him. The doctor was asked a hypothetical question based upon Mrs. Phillips' answers to questions propounded to her by one of the defendants' attorneys on September 18, 1956, which will be referred to later; and in answer to that question, the doctor stated: "Assuming that all of that is true and the patient stated that she had no pain other than what you have mentioned, it would be difficult to correlate the symptoms which she had when I saw her with what she made in her statement."

The appellant, testifying in her own behalf, stated that she was employed at the Century Manufacturing Company, and had been working there about two and one-half years, and that she was riding as a passenger in Mrs. Berdie Mae Stephens' automobile on her way to the plant when the accident referred to in her declaration occurred. The car in which she was riding had stopped at the Broadmoor intersection on North State Street to wait for a light to change, and all of a sudden the car was hit from behind by a truck and was shoved forward five or six feet. The appellant stated that she was riding on the left side of the back seat of the car, and that she was jarred from her seat when the truck collided with the car. The jar caused her to suffer discomfort in her neck and right side, but she went on to work. She told her mother-in-law and her father-in-law about the accident when she got home, but she did not

go to see a doctor at that time. Later on she suffered some nervousness and headaches, and finally went to see a doctor in November, 1956, and in December, 1956, she went to see Dr. Turner. Doctor Turner recommended that she get a traction halter for her neck, and she wore the traction halter from December until April. The appellant stated that R. A. Pritchard, one of the defendants' attorneys obtained a statement from her sometime during the month of September, 1956. The attorney was not inquiring about her case at that time, but about a claim which had been made by Mrs. Berdie Mae Stephens. The appellant admitted on cross-examination that she did not tell the people at the plant where she worked that she had been injured. She also admitted that she had not visited the first aid room at the plant at any time between May 15 and November 15, 1956.

Mrs. Berdie Mae Stephens testified that she was working at the Century Manufacturing Company plant at the time the accident occurred. She carried five passengers with her to work, including Mrs. Mary Jane Phillips. Mrs. Phillips was riding on the left side of the back seat of the car. Mrs. Stephens stated that the Delta Lines truck hit the left back fender of her car, and that she was thrown forward against the steering wheel. The passengers on the back seat were thrown against the front seat. Another north bound vehicle had stopped on her right side at the intersection, and several vehicles were entering the intersection from Broadmoor and heading southwardly on State Street. Mrs. Stephens stated that the driver of the truck did not sound his horn as he approached the intersection, and she did not see the the truck until after it hit her car. When the truck came to a stop, the front end of the truck was a little above her left rear wheel. Mrs. Georgia Phillips, Mary Jane Phillips' mother-in-law, testified that, when Mary Jane came home after her day's work, on May 15, 1956, she looked pale, and Mrs. Phillips rubbed her with liniment

and applied a smoothing iron to her back. She and her husband finally persuaded Mary Jane to go to see a doctor, and Mary Jane wore a collar around her neck for a period of about two months. On cross-examination Mrs. Phillips admitted that Mary Jane had not missed a single day from her work since the accident occurred.

K. C. Foster, the driver of the truck, testified that he had been employed by the Delta Motor Lines since 1952. The truck that he was driving on May 15, 1956, was a Ford tractor and trailer unit of the same general type that he had driven for the City Coal & Lumber Company for a period of four years. Foster state that he had driven the same Ford truck the day before the accident, and the braking system was working properly. When he went to work on the morning of May 15, 1956, he built up the air pressure used to operate the air brakes to 95 pounds, which was the proper amount. He made several stops before he got to the Broadmoor intersection. The last stop was at Northside Drive. His brakes were working properly at that time, and he had no warning when he left Northside Drive that he would have any trouble with his brakes. He was driving at a rate of speed of about 20 or 30 miles per hour as he approached the traffic light at Broadmoor. He applied his brakes when he was about 140 or 150 feet from the Stephens car in front of him. His brakes "grabbed a little bit", but did not hold. He felt them give way when he was about 50 or 60 feet from the Stephens car. He did not have quite enough air to come to a complete stop. He rolled on up to about six feet from the car, and he cut to the left trying to dodge the car, but his front bumper hit the left side of the back fender of the Stephens car. The car was shaken when the truck hit it, but it did not move. The truck rolled until it was about even with the back door of the car and came to a stop. Foster stated that no damage was done to his truck. The radiator of his truck was hot because the air com-

pressor failed to work, and water was boiling over, but no damage was done to the radiator. He stated that he made no effort to stop the truck with the emergency brake when his air brakes failed to work—he did not have time to do that. He pulled to the left because there was no traffic in that lane of travel at that time. There was a car on the right side, and he could not pull to the right.

Buford B. Chalk, shop foreman for Delta Motor Lines, testified that Delta Motor Lines trucks were inspected for all mechanical defects, oil leaks and air leaks every ten days or two weeks. The truck which K. C. Foster was driving at the time of the above mentioned accident had been inspected on April 26, 1956, May 5, 1956, and May 12, 1956. The inspection on May 12 showed that the truck needed no repairs or attention of any kind. Chalk stated that there were two independent braking systems on the truck, one was an air brake system which was worked with a hand brake and a foot pedal. Completely separate and apart from that system, there was an emergency system for parking. Chalk described in detail the method of operating the braking system on the tractor and the trailer; and Chalk stated that the braking system as described by him was in substantially the same condition as it was when the truck was acquired from the manufacturer. He stated that the foot pedal, the hand lever for the application of air pressure, and the emergency braking system, were all in proper working order at the completion of each of the routine checks mentioned above.

Miss Vera Cavin, a shorthand reporter, testified that she took down in shorthand and later transcribed a statement given by Mrs. Mary Jane Phillips to R. A. Pritchard on September 18, 1956. The statement was offered in evidence and constitutes a part of the record which we now have before us; and the statement shows that Mrs. Phillips at that time was asked the following

questions about any injuries that she may have suffered as a result of the accident of May 15, 1956, and gave the following answers:

"Q. Mrs. Phillips, you weren't hurt in that wreck in any way, were you?

A. No, sir.

Q. Were you even sore as a result of it?

A. A little bit, but not much.

"Q. What portion of your body was sore?

A. It was through my—right through my back here where I was sitting in the seat—right through there is where it was sore.

Q. It wasn't sharp enough blow to hurt you any?

A. No, sir.

Q. You are completely well now, then.

A. Yes, sir."

The appellant requested two instructions which were peremptory in character, and which the trial judge refused to grant. In the first instruction the appellant would have had the court instruct the jury that, if they believed from a preponderance of the evidence "that the plaintiff sustained any injury or injuries as a proximate result of the truck belonging to Delta Motor Lines, Inc., striking the rear of the automobile occupied by the plaintiff," they should find for the plaintiff. In the second instruction the appellant would have had the court instruct the jury that, "on the issue of liability" they must find for the plaintiff. Both of these instructions, in our opinion, were properly refused. The first instruction called for a ruling by the court that the driver of the truck was guilty of negligence as a matter of law in failing to bring his truck to a stop before it struck the automobile in which the appellant was riding. The second instruction would have had the court find as a matter of law, not only that the driver of the truck was guilty of negligence in the operation of his vehicle, but also that the plaintiff was injured as a result of such negligence.

■■■ The fact that the brakes of an automobile are defective is a material element in the determination of the question of negligence in a case involving a collision with or by such machine, where the owner or driver knew, or should, by the exercise of proper care, have known, of the defect; and, generally, if it is shown that the brakes were defective, or were inadequate, the driver, or the owner, as the case may be, may be held liable for injuries proximately resulting from such defective or inadequate brakes. 5A Am. Jur. 380, Automobiles and Highway Traffic, Section 248. But, the mere failure of brakes to function properly is not conclusive of the driver's negligence. Failure of brakes to operate makes only a prima facie case which the driver may defend by showing proper inspection and a sudden failure without warning. Landry v. Hubert (1928), 101 Vt. 111, 141 A. 593, 63 A. L. R. 396; Sothoron v. West (1942), 180 Md. 539, 26 A. 2d 16; Amelsburg v. Lunning (1944), 234 Iowa 852, 14 N. W. 2d 680. Walk v. Boudheim (1937), 223 Wis. 514, 271 N. W. 27; Smith v. Finkel (1943), 130 Conn. 354, 34 A. 2d 209.

The evidence in this case shows that the brakes of the Delta Motor Lines truck had been inspected and found to be in proper condition three days before the accident. The brakes were working properly the day before the accident and during the early part of the morning of May 15. The driver of the truck had made several stops after leaving the Motor Lines terminal only a short time before the accident occurred, and had experienced no difficulty with the brakes until he undertook to apply them as he approached the Broadmoor intersection. He was driving at a reasonable rate of speed, and he applied his brakes in ample time to come to a stop before he reached the intersection. His brakes "grabbed", but did not hold, and when it became apparent that the truck would not come to a complete stop before coming in con-

tact with the car in front of him, he pulled to the left in an effort to avoid striking the car.

The fact that the emergency with which Foster was confronted was not of his own creation did not relieve him of the duty to exercise such care as a reasonably prudent and capable driver would use under the unusual circumstances, or absolve him from liability for failure to exercise such care. But, one placed in a position of sudden emergency or peril other than by his own negligence is not held to the same degree of care and prudence as one who has time for thought and reflection. This is made clear in 1 Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 1, Part 2, Perm Ed., Sec. 668, pp. 538-545, where the rule is stated as follows:

"When one is confronted with a sudden peril requiring instinctive action, he is not, in determining his course of action, held to the exercise of the same degree of care as when he has time for reflection, and, in the event that an automobilist suddenly meets with an emergency which naturally would overpower the judgment of a reasonably prudent and careful driver, so that momentarily he is thereby rendered incapable of deliberate and intelligent action, and as a result injures a third person, he is not negligent, provided he has used due care to avoid meeting such an emergency and, after it arises, he exercises such care as a reasonably prudent and capable driver would use under the unusual circumstances, which is usually for the jury.

"In other words, somer allowance must be made for the time required for the requisite mental and physical operations of a motorist in applying his brakes or doing whatever else is necessary when an emergency arises."

Whether Foster was negligent in failing to exercise such care, after his air brakes gave way, as a reasonably prudent and capable driver would have used under the unusual circumstances to avoid an accident, was a question for the jury to decide under proper in-

structions of the court. Moore v. Taggart, (Miss 1958) 102 So. 2d 333.

But even if the jury had found that Foster was negligent in failing to exercise such care as a reasonably prudent and capable driver would have used under the unusual circumstances, such finding would not have necessarily meant that the plaintiff was entitled to recover damages. "A cause of action for negligence depends not only upon the defendant's breach of duty to exercise care to avoid injury to the plaintiff, but also upon an injury suffered by the plaintiff as a consequence of the violation of duty." 38 Am. Jur., p. 672, Negligence, par. 27. As this Court said in Campbell v. Willard, 205 Miss. 783, 39 So. 2d 483, "While negligence is the failure to use reasonable care, it remains an abstract concept until such negligence results proximately in injury to one to whom the obligation of due care is owed." Even if the jury in this case had found that Foster was negligent, the plaintiff would not have been entitled to recover unless the jury believed from the evidence that she had been injured as a result of Foster's negligence.

"Injury or damage to the person complaining is an essential element of actionable negligence, since, * * * even though an act or omission may be negligent in the colloquial sense because it involves a lack of due care, no cause of action arises therefrom unless the person complaining has been injured in consequence thereof. * * * If the negligent act or omission has resulted in no injury or loss to anyone, it is merely *injuria sine damno,* although it involved violation of a statute or ordinance; * * *." 65 C. J. S. 366, Negligence, par. 6.

"In negligence matters, the presence of damage in fact very generally is viewed as an inherent part of the substantive right. If no actual damage can be shown, no legal wrong is shown, and no award (not even of nominal damages) is proper." Oleck, Damages to Persons and Property, p. 54, par. 75. See also Sullivan v.

Old Colony St. Ry. Co., 200 Mass. 303, 86 N. E. 511; Perry v. Hanover, 314 Mass. 167, 50 N. E. 2d 41; Hall v. Cornett, 193 Ore. 634, 240 P. 2d 231; Goff v. Emde, 32 Ohio App. 216, 167 N. E. 699 (1928); and Schmidt v. Merchants Dispatch Transportation Co. (1936), 270 N. Y. 287, 200 N. E. 824, 104 A. L. R. 450.

In the case of Sullivan v. Old Colony St. Ry. Co., supra, the Court held that a carrier is not liable for negligence toward a passenger not resulting in injury. In its opinion in that case the Court said: "No question was made at the trial but that the defendant was liable for any injury done to the plaintiff by reason of its car having left the track. But if no injury was caused by this to the plaintiff; if he suffered no damage whatever from the defendant's negligence, then he would not be entitled to recover. Although there has been negligence in the performance of a legal duty, yet it is only those who have suffered damage therefrom that may maintain an action therefor. Heaven v. Pender, 11 Q. B. D. 503, 507; Farrell v. Waterbury Horse R. R., 60 Conn. 239, 246, 21 Atl. 675, 22 Atl. 544; Salmon v. Delaware, Lackawanna & Western R. R., 38 N. J. Law 5, 11, 20 Am. Rep. 356; 2 Cooley on Torts (3d ed.) 791; Wharton on Negligence (2d ed.) par. 3. In cases of negligence, there is no such invasion of rights as to entitle a plaintiff to recover at least nominal damages, as in Hooten v. Barnard, 137 Mass. 36, and McAneany v. Jewett, 10 Allen 151."

In the case of Hall v. Cornett, supra, the Court said: " 'Some damages are always presumed to follow from the violation of any right or duty implied by law. * * * ' Smith v. Pallay, 130 Ore. 282, 279 P. 279, 281. But this rule must be understood in connection with another. In a case of personal injury, caused by common-law negligence, such as is alleged here, an actor is liable only if he invades an interest which the law protects against unintended invasion. 65 C. J. S., Negligence, par. 1c, page 319; Restatement, Torts, par. 281; 38 Am. Jur., Negli-

gence, 672, par. 27. Damage is the gravamen of such an action for negligence. Negligent contact with the person of another, causing no physical damage is not actionable. That is to say, no right of the plaintiff is invaded in such a case unless actual damage is done. Sullivan v. Old Colony Street Railway, 200 Mass. 303, 86 N. E. 511; Muncie Pulp Co. v. Davis, 162 Ind. 558, 70 N. E. 875; 1 Am. Jur., Actions, 424, par. 31; Christopher v. McGuire, 179 Ore. 116, 169 P. 2d 879; Schumann v. Bank of California, National Assn., 114 Ore. 336, 233 P. 860, 37 A. L. R. 1531; Chambers v. Everding & Farrell, 71 Ore. 521, 136 P. 885, 143 P. 616.''

In the case of Perry v. Hanover, supra, the court held that in a negligence case there is no such invasion of rights as to entitle the plaintiff to recover at least nominal damages, and although there has been negligence, only those who have suffered damage therefrom may maintain an action therefor.

In Goff v. Emde, supra, the court said that ''in order to be actionable, the claimed negligence must result in injury, loss, detriment, or mischief to another.'' In Schmidt v. Merchants Despatch Transportation Co., supra, the court said: ''Though negligence may endanger the person or property of another, no actionable wrong is committed if the danger is averted. It is only the injury to person or property arising from negligence which constitutes an invasion of a personal right, protected by law, and, therefore, an actionable wrong.''

 The issues presented by the pleadings and the proof in the case that we have here were fairly submitted to the jury under proper instructions of the court; and whether the jury based its verdict upon a finding that the driver of the truck was not negligent in failing to exercise such care, after his air brakes failed to work, as a reasonably prudent and capable driver would have used under the unusual circumstances to avoid the collision, or upon its finding that the plaintiff was not in-

jured as a result of the collision, we think that it cannot be said that the verdict of the jury was against the overwhelming weight of the evidence.

■■■ We also think there was no error in the court's refusal to grant the two instructions requested by the appellant relating to the failure of the driver of the truck to operate his vehicle at a reasonable rate of speed and to have his truck equipped with two independent and effective brakes and "with a suitable horn or effective signal device for giving notice of its approach." There is no evidence in the record which indicates that Foster was driving his truck at an excessive rate of speed as he approached the Broadmoor intersection, or that the accident was due to Foster's failure to sound his horn or give warning of his approach to the driver of the Stephens car. The testimony relating to the appellees' braking system showed that it complied with the statute.

We find no reversible error in the record, and the judgment of the lower court is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Roberds, Ethridge* and *Gillespie, JJ.,* concur.

Holmes, J., Dissenting:

I respectfully dissent from the views of the majority insofar as they hold that the verdict of the jury is not contrary to the overwhelming weight of the evidence, and that even conceding that the negligence of the defendants was the proximate cause of the collision, the plaintiff is not entitled to recover because there is no proof of actual damages.

The question as to whether the verdict of the jury is contrary to the overwhelming weight of the evidence needs but little discussion since the admissions of the defendant Foster, who was driving the truck, clearly and without contradiction establish his negligence. He tes-

tified that when he was about 150 feet from the intersection he undertook to apply his foot brake and that the brakes grabbed but finally held; that when he had reached a point about fifty or sixty feet from the car, his foot brake went out entirely; that his truck was equipped with a foot brake and a hand brake and an emergency brake; that he did not attempt to stop the truck with the emergency brake; that when he was about fifty feet from the car and the brakes gave way, he did not try to stop his truck either with the hand brake or the emergency brake. He said: ''I was looking for it to roll and completely stop; it rolled on up to about six feet and I thought I could dodge the car, but after it didn't roll to a complete stop, I tried to dodge it.'' Thus the defendant Foster admits that his brakes gave way when he was about fifty feet from the car and that he made no effort to stop his truck either with the hand brake or the emergency brake. It is manifest that at this time his truck was moving very slowly and that the application of the emergency brake would have stopped the truck and prevented the collision. In my opinion, it was negligence for Foster to permit the truck to roll without making any effort by the use of his emergency brake to stop the same. The jury, in the face of these uncontradicted admissions of Foster, was not warranted in exonerating Foster of negligence proximately causing the collision and its verdict in so doing was, in my opinion, not only contrary to the overwhelming weight of the evidence but contrary to the defendant's own admissions, from which his negligence clearly appears.

But the majority say that even if it be conceded that the proof shows the defendants were guilty of negligence proximately causing the collision, the plaintiff is not entitled to recover in the absence of a showing of actual damages. In other words, the majority adopts the view that negligence is not actionable unless it proximately results in injury to one to whom the obligation of due

care is owed; that even though an act or omission be negligent, no cause of action arises therefrom unless the person complaining has been injured in consequence thereof, and that in such case, there can be no recovery even for nominal damages. In support of this view the majority cites authorities from other jurisdictions and only one Mississippi case, namely, the case of Campbell v. Willard, 205 Miss. 783, 39 So. 2d 483, from which they quote the following: "While negligence is the failure to use reasonable care, it remains an abstract concept unless such negligence results proximately in injury to one to whom the obligation of due care is owed."

It is true that some of the Courts of other States hold that in an action based on negligence, if plaintiff fails to prove actual damages, he is not entitled to nominal damages. 25 C. J. S., Damages, Sec. 10, p. 468. This view, however, which is the view of the majority, is not in accordance with the general rule. 15 Am. Jur., Damages, p. 393, states the general rule as follows: "The general rule, however, is that in any violation of one's rights, whether actual damage is inflicted or not, whether the action sounds in tort for personal injuries or otherwise, in the absence of proof of actual damage, at least nominal damages may be recovered."

The Supreme Court of Mississippi has adhered to this general rule in an unbroken line of decisions for more than three-quarters of a century.

The case of Thompson v. N. O., J. & G, N. R. R. Co., 50 Miss. 315, decided in 1874, was an action against the railroad company for damages predicated upon the negligence of the defendant in carrying the plaintiff beyond his station. There was a demurrer to the evidence of the plaintiff which the Court sustained and dismissed the plaintiff's suit. The Court said: "Upon the evidence, the plaintiff acquired a technical right of recovery, but the rule as to punitive damages does not apply. Hence, although the damages are only nominal, nevertheless, the

cause of action ought to have been sustained, and a writ of inquiry awarded, . . . ."

The case of Keirn v. Warfield, 60 Miss. 799, was an action for an alleged trespass in cutting and taking trees. The Court said: "Upon the count in the declaration for the actual value of the trees taken, plaintiff was at least entitled to a verdict and judgment for nominal damages, though no actual value was proved. Every breach of duty or violation of right entitles the party wronged to damages, and if none other be shown, nominal damages should be awarded."

The case of McGhee v. Laurel Light and Rwy. Co., 113 Miss. 603, 74 So. 434, was an action of trespass upon the property of the plaintiff by going upon her property without her consent and cutting her ornamental shade trees standing thereon. The case was submitted to a jury who returned a verdict for the defendant. In reversing the judgment of the court below, this Court said: "From the undisputed proof in the record it appears that the appellee, Laurel Light and Railway Company, through its agents and servants, trespassed upon the property of appellant by going upon her premises, without her consent, and cutting the limbs of her ornamental shade trees standing thereon. This act constituted an invasion of the rights of appellant, and renders appellee liable for nominal damages, even though no actual damages be shown. It is the invasion of the right which gives the cause of action."

The case of Doherty v. Mississippi Power Co., 178 Miss. 204, 173 So. 287, was an action by Mrs. George Doherty against the Mississippi Power Company, seeking to recover actual and punitive damages for the alleged wilful and wanton wrong on the part of the Mississippi Power Company in disconnecting Mrs. Doherty's electric lights. The trial court peremptorily instructed the jury to return a verdict for the defendant. This Court, in reversing and remanding the case, said: "The

only remaining question is whether or not, under the facts, the appellant was entitled to recover nominal damages. The law presumes damage from the infringement of a legal right. The appellant here sued for and established by her proof, the violation of her asserted legal right to have the interest due her offset against her light bill; and for the wrongful and negligent breach of duty on the part of the appellee in this regard, she was entitled to recover at least nominal damages. Therefore the peremptory instruction to the jury to return a general verdict for the defendant was erroneous, and the judgment of the court below will be reversed, and the cause remanded.''

The very recent case of Bush v. City of Laurel, 105 So. 2d 562, decided by this Court on October 13, 1958, was an action to recover damages for an alleged trespass upon plaintiff's land. It was contended in that case that the declaration stated no cause of action in that it failed to allege any recoverable damages. The Court said: ''The general allegation in the bill, however, is that the appellant committed a trespass in going upon the land of the appellant and if such be proven on the trial, then the appellants would be entitled to recover at least nominal damages even if the proof failed to show any actual damages. We therefore think that the declaration is sufficient to withstand the challenge that it fails to state a cause of action or any recoverable damages.''

Reference to the foregoing decisions of this Court make it readily apparent that the view adopted by the majority is contrary to the rule which has been adhered to by this Court in an unbroken line of decisions.

The case of Campbell v. Willard, supra, relied upon by the majority, affords no precedent in my opinion for overruling the unbroken line of decisions heretofore referred to. That involved an action for wrongful death and, of course, was a case in which actual damages were sustained. The language quoted from the decision in

this case was, therefore, not necessary to a decision of the case and was pure dictum, and is not to be followed as a precedent for overruling the many prior decisions of this Court holding to the contrary.

With deference, I am of the opinion that the views adopted by the majority are contrary to the prior decisions of this Court and should therefore not prevail. .

It is accordingly my conclusion that the judgment of the court below should be reversed and the cause remanded.

*Hall, Lee* and *Arrington, JJ.*, join in this dissent.