GILLESPIE, Presiding Justice.
William H. Howard (hereinafter plaintiff) brought suit in the Circuit Court of Harrison County against Southern CATV Systems, Inc., (hereinafter TV Systems) and TV Systems’ driver-employee, Ronald G. Bond, for back injuries allegedly sustained when the panel truck of TV Systems which was being driven by Bond collided with the rear of the borrowed automobile which plaintiff, as driver, had stopped at a traffic light. The jury, having been instructed to return a verdict for plaintiff, rendered the following judgment: “We, the jury, find for the plaintiff in the amount of $0.00.”
Judgment was entered for plaintiff in the amount of $0.00 and costs. Plaintiff’s motion for a new trial on the sole issue of damages was sustained. Upon retrial a second jury returned a verdict for plaintiff in the amount of $18,000.
Appellant-defendants assign as error the action of the trial court in sustaining the motion for a new trial. We hold that this was error; therefore, the judgment in the second trial is reversed and the judgment in the first trial reinstated.
The question of defendants’ negligence proximately causing the collision is not in question. The only issue before the jury in the first trial was (1) whether plaintiff sustained damages as a result of the collision, and (2) if so, what amount should be awarded as compensation therefor. The verdict evidences the finding of the jury that plaintiff sustained no damages.
As to the extent of the collision there existed some conflict but the jury could have believed defense witness Roberts who testified that the TV Systems’ truck “barely hit [plaintiff] with the headlight.”
On December 3, 1965, the date of the accident, plaintiff was in the military service at Keesler Field in Biloxi, Mississippi, and was on leave from the base hospital, where he had undergone a cyst operation, to go to *454 New Orleans on a personal mission. After the accident plaintiff made no complaint of injury to anyone, including the two occupants of the TV Systems’ truck or the policeman who investigated the accident. Plaintiff returned to the base hospital on December 4, 1965, and remained there because of the cyst operation until December 12, when he was discharged. During this time the hospital records do not reveal any complaint of injury suffered in the accident. The day after his discharge plaintiff was readmitted to the hospital for alleged back trouble.
Plaintiff, who was nineteen years of age when the accident occurred, testified on direct examination as follows: Immediately after the accident no back pain was felt though when he resumed the trip to New Orleans his back began to hurt. He had no previous back injury, only sore muscles from playing football which had never required hospitalization. He had just completed strenuous basic military training. The back pain had seriously restricted his physical activities since the accident. A discharge from military service was received in April 1966 on the ground that a medical board had decided, “I was no longer fit for military service.” On cross examination, however, plaintiff admitted that he started having back trouble at the age of twelve when he injured his back skiing and that he was taken to a hospital for examination. He stated that he had been treated on several previous occasions. Upon' being questioned regarding the medical board report which bore his signature, plaintiff testified that his military discharge was based upon a back injury existing prior to induction. The diagnosis of the medical board was ten percent disability for an incomplete “herniation of nucleus pulposus” that existed prior to, but was aggravated by, the military service. Since discharge from the service plaintiff has been employed as a medical laboratory technican and part of this time he has attended college. At the time of the first trial he was earning $350 a month as a laboratory technican.
Dr. James E. Winslow, an orthopedic surgeon, for the United States Air Force, began treating plaintiff at the Keesler Field Hospital on December 12, 1965. He stated that plaintiff remained hospitalized until February 23, 1966. During this time, plaintiff complained of back pain, increased by walking, and that this had gradually intensified since the accident of December 3, 1965. After two weeks of bed rest which showed no worsening or improvement in plaintiff’s condition, Dr. Winslow was unable to make a specific diagnosis. Plaintiff underwent a lumbar myelogram which failed to reveal any specific abnormality. Dr. Winslow thought plaintiff had a ten percent disability due to the incomplete herniation. Dr. Wins-low said plaintiff gave him a medical history which revealed a back injury incurred prior to entering the service from a skiing injury and that he had been hospitalized prior to military service because of his back; he determined that he had undergone a myelogram prior to entry into the service. Dr. Winslow stated that the symptoms of partial herniation were chronic and the condition of partial herniation could have existed prior to plaintiff’s induction into the service. Dr. Winslow recognized that the reliability of the tests as tb plaintiff’s condition depended upon the sincerity and honesty of plaintiff.
Plaintiff falsely stated on direct examination that he had not sustained any back injury prior to December 3, 1965. It developed on cross examination that plaintiff before entering military service and thus, before the accident, had sustained back injuries, had been hospitalized therefor and had undergone a myelogram. It is not necessary to point out other conflicts in plaintiff’s testimony since the jury had ample evidentiary support for its finding that plaintiff did not sustain back injuries in the accident of December 3, 1965. The only evidence that his back condition worsened after the accident was, according to Dr. Winslow, plaintiff’s own word, which the jury evidently did not accept. We have stated in some detail the evidence upon *455 which the jury could, and no doubt did, rely in assessing no damages.
In numerous cases this Court has stated that it will look with favor upon the action of the trial court in ordering a new trial and will reverse only when the trial court is manifestly wrong. We approach this case in light of this rule. Plaintiff asserts two reasons for the granting of a new trial; they are (1) the verdict was against the evidence, and (2) the verdict was contrary to the instruction that the jury find for plaintiff.
The first ground is without merit. There was evidence to justify a verdict for plaintiff. However, the evidence tending to show that plaintiff’s back condition resulted from the accident of December 3, 1965, is weak. Considering his misstatements in an effort to suppress the facts of his prior injuries and treatment, the evidence cannot be said to preponderate in his favor.
The second contention, i. e. that the verdict was contrary to the instruction of the court to find for plaintiff, presents an interesting question. In intentional tort cases when a peremptory instruction is given a plaintiff the jury must award damages, at least in a nominal amount. In Bumgart v. Bailey, 247 Miss. 604, 156 So.2d 823 (1963), intentional torts were distinguished from “ordinary negligence cases” such as the one now before the Court. In Kellum v. Cooperative Creamery Ass’n, Inc., 238 Miss. 731, 120 So.2d 433 (1960) and Phillips v. Delta Motor Lines, Inc., 235 Miss. 1, 108 So.2d 409 (1959) it was held that in ordinary negligence cases a cause of action does not arise unless the plaintiff sustained damages. In Phillips v. Delta Motor Lines, Inc., supra, the Court said:
In negligence matters, the presence of damage in fact very generally is viewed as an inherent part of the substantive right. If no actual damage can be shown, no legal wrong is shown, and no award (not even of nominal damages) is proper. 235 Miss, at 14, 108 So.2d at 415).
We hold therefore that the grounds relied upon by plaintiff in his argument to support the granting of a new trial are without merit.
Moreover, the instruction to find for plaintiff was error. Kellum v. Cooperative Creamery Ass’n, Inc., supra. Plaintiff can gain no advantage because the jury was erroneously instructed. The instructions should have informed the jury that defendants’ negligence was the proximate cause of the collision and left it to the jury to determine whether plaintiff sustained injuries as a result thereof.
We hold that the trial court erred in setting aside the jury verdict assessing no damages in the first trial. This renders it unnecessary to consider the assignments of error which purportedly transpired during the second trial. The judgment in the second trial is reversed and judgment will be entered here reinstating the verdict and judgment in the first trial.
Reversed and judgment rendered reinstating verdict and judgment rendered in first trial.
ROGERS, PATTERSON, SMITH and ROBERTSON, JJ., concur.