# IN THE COURT OF APPEALS 10/01/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 94-CA-00359 COA

**MIONA COOK WHITE**

**APPELLANT**

**v.**

**DOUGLAS MICHAEL SIPE**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. BARRY W. FORD

COURT FROM WHICH APPEALED: LEE COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

WILLIAM O. RUTLEDGE

ATTORNEYS FOR APPELLEE:

MICHAEL FARRELL

TODD I. WOODS

NATURE OF THE CASE: TORT

TRIAL COURT DISPOSITION: JURY VERDICT IN FAVOR OF APPELLEE

BEFORE FRAISER, C.J., BARBER, AND SOUTHWICK, JJ.

FRAISER, C.J., FOR THE COURT:

Miona Cook White (White) brought suit against Douglas Michael Sipe (Sipe) in the Lee County

Circuit Court for alleged personal injuries sustained in an automobile accident. Both parties stipulated that Sipe's negligence caused the accident, but reserved the issue of whether White suffered personal injuries as a result of the collision. The jury returned a verdict in Sipe's favor. White presents the following issues for appellate review:

> I. THE COURT ERRED IN GRANTING AN INSTRUCTION WHICH ALLOWED THE JURY TO FIND FOR THE DEFENDANT WHEN THE DEFENDANT HAD ADMITTED LIABILITY.

> II. THE PLAINTIFF PROVED BY A PREPONDERANCE OF THE EVIDENCE THAT SHE SUFFERED INJURIES AND DAMAGES AS A RESULT OF THE ACCIDENT ON SEPTEMBER 19, 1991, IN WHICH THE DEFENDANT ADMITTED LIABILITY, AND THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

Finding no error, we affirm.

FACTS

On September 19, 1991, White, a front seat passenger in her 1985 Pontiac being driven by a friend, traveled south on Gloster Street in Tupelo, Mississippi. Gloster Street has four lanes, two for northbound traffic and two for southbound vehicles. White's auto occupied the outside lane, being the one nearer the west street curb. Sipe at the time was driving his Chevrolet Suburban south on the inside lane of Gloster and attempting to find a fast food restaurant. Having located a restaurant on the west side of Gloster Street, Sipe drove from the inside traffic lane into the outside traffic lane, then occupied by White's vehicle, resulting in the collision constituting the basis for this case.

White's vehicle was struck on the rear of the left side and sideswiped to its left front. The two cars came to a stop. Sipe and his wife immediately inquired about the White vehicle occupants. White did not exit her vehicle, but sat inside the car smoking a cigarette. When asked if she needed medical attention, she replied that she did not, although she thought she might have hurt her back. No one else sustained any injuries.

Subsequently, White brought this action against Sipe seeking damages for personal injuries received as a result of the collision. Prior to trial, the parties executed and filed a document entitled "Stipulation of Facts" which includes the following:

> The defendant, Douglas Michael Sipe, admits (1) sole negligence by him in switching lanes and (2) that his negligence was the proximate cause of the collision of his vehicle with the vehicle in which Miona Cook White was riding.

> The parties reserve the right to offer evidence as to all facts not heretofore expressly

agreed upon including whether Miona Cook White suffered any personal injuries as a result of the collision.

Upon conclusion of the trial testimony, the court submitted instructions of the parties to the jury. The following verdict was returned: "We the jury, find for the defendant, Michael Sipe." During trial, White explained that she refused medical treatment because her children were with a baby sitter and she knew that the baby sitter had to leave. She also stated that she preferred to see her own doctor rather than go to the emergency room. White rested on the couch at a friend's house the day of the accident and visited her doctor, Dr. Creekmore, the next day. According to her testimony, she told him what hurt, but her testimony is unclear as to exactly what that was. Dr. Creekmore referred her to Dr. Burnette, an ear, nose and throat specialist in Oxford to look at her nose. White made no mention of injury to her nose the day of the accident. She saw Dr. Burnette two weeks after the wreck and told him that she wanted her nose straightened. Dr. Burnette stated by deposition that White came to him with a crooked nose. She told Dr. Burnette that the condition of her nose was caused by injuries sustained in a car wreck; however, Dr. Burnette stated that he did not see an acute stage of injury. White underwent a septorhinoplasty on her nose on October 23, 1991.

Dr. Burnette's procedure on White was not her first nose operation. On New Year's Eve, 1989, White's boyfriend hit her in the face and broke her nose. Dr. Lowrey, the emergency room doctor in New Albany performed surgery on White's nose. Six months later White underwent more surgery on her nose to further straighten it. Two weeks after that second surgery, White's son bumped her nose causing it to bend or deviate to the side.

During the time White underwent treatment for her nose, she complained of pain in her mouth. She stated that she first attributed the pain to her nose, but later realized that her mouth was injured in the accident. She saw her dentist, Dr. Howell, after her nose surgery. Dr. Howell had been treating White since 1988. On her first visit he found sixteen cavities, which he filled. From the time of her initial visit with Dr. Howell to the date of the Sipe accident, White had over sixteen cavities filled, root canal work, experienced TMJ (a jaw affliction), dislocated a left meniscus (cartilage in the jaw), had several teeth pulled, and often experienced pain requiring narcotic relief. Obviously, White had a history of mouth pain years before the accident with Sipe.

Dr. Howell's office notes made on White's initial visit two weeks subsequent to the accident show that after his examination he recommend crowns and fillings for cavities, with the fillings being noted as most important. No mention was made in his notes about White's vehicle accident, nor was there any notation about any type of facial or mouth injury due to the accident. Notes made after subsequent exams, however, do relate that White's injuries resulted from the automobile wreck. Dr. Howell explained that those notes were based on the patient history White gave him, and not on an independent examination. Additionally, Dr. Howell's records contained a handwritten note from White reading, "my lawyer said all bills will be paid when claim is settled if due to automobile accident."

White visited Dr. Howell again on October 28, 1991. Howell's notes after that exam revealed that a tooth with previous root canal work had some damage, and White had a mouth infection. He noted that she had so many cavities they were too numerous to identify. On White's next visit, Dr. Howell

recommended crowns on all White's lower teeth, possible root canals, and three teeth extracted. On January 23, 1992, Dr. Howell crowned all of White's upper teeth. His notes from that day reveal the extent of White's poor oral hygiene:

> A. (Dr. Howell reading his notes) Miona is going to have to help me with her oral hygiene. She will have constant problems that I can't help her with, if she doesn't brush. We will have dentures later.
>
> . . . .
>
> A. Gel Cam oral rinse dispensed. She has ANUG [acute necrotizing ulcerated gingivitis] real bad. Vcillin K two hundred milligrams by thirty was dispensed. We begged and pleaded with her to brush downward to get the inflamed gingival margins to cover her roots; since oral hygiene is nonexistent, we recommend [removal] of all of the lower teeth and a placement of a lower denture.

Howell explained that the ANUG White suffered from is commonly referred to as "trench mouth." Because of her nonexistent oral hygiene and the resulting infection, Howell felt the only option was to pull her lower teeth instead of crowning them. He referred White to Dr. Everitt, an oral surgeon for the removal of her lower teeth. During trial Dr. Howell read the following memorandum made by him following his telephone conference with Dr. Everitt concerning the recommended oral surgery:

> A. Dr. Everitt called today and said Miona had half of McDonald's packed between her upper crowns. She had zero efforts on oral hygiene. He said she wanted to remove top and bottom teeth. I told him we could not get her in for lower denture impression. He said she was so uncooperative that he had to do her work in the hospital. He is holding up treatment until the hygiene cooperation improves.

Dr. Howell then testified as follows:

> Q. Ok. What did Dr. Everitt mean when he said that Mrs. White had one-half of McDonald's packed in her upper crowns?
>
> A. Probably just a facetious statement. There was apparently a lot of food and stuff on her teeth at that time.
>
> Q. And would you agree with me that the tone of this conversation was a lot of disgust on the part of Dr. Everitt?

A. Probably, let's see. Probably so.

. . . .

Q. And you get frustrated with patients, don't you?

A. Every day.

Q. Because they don't cooperate and they don't do what's good for their own dental health.

A. Every day.

Dr. Howell stated that he had many conversations with White about the need for good oral hygiene, especially in view of the fact that the life of her teeth were at stake. Nonetheless, White's teeth were pulled, and Dr. Howell fitted her with dentures, although she was only twenty four (24) years old. White's last appointment with Dr. Howell occurred in December 1992. She next consulted Dr. Priester, who testified by deposition that the denture work performed by Howell was grossly unsatisfactory and had to be completely redone.

The day of the accident, White only complained of pain to her back, but most of the trial testimony was reserved for the alleged injuries to her nose and teeth. The only evidence of the alleged back injury was White's testimony that she hurt her back, her mother's testimony that White told her she hurt her back, and a bill from a chiropractor. No evidence was introduced to link the chiropractic bill to any alleged back injury resulting from the Sipe collision. Moreover, testimony adduced during White's cross-examination revealed that she had been in several previous vehicular accidents. White admitted she received injuries to her back. The record is absent medical testimony that White's back was injured in or as a result of the Sipe collision.

> I. THE COURT ERRED IN GRANTING AN INSTRUCTION WHICH ALLOWED THE JURY TO FIND FOR THE DEFENDANT WHEN THE DEFENDANT HAD ADMITTED LIABILITY.

To begin with, White is incorrect in asserting that Sipe admitted liability. He did not. The parties stipulated that Sipe was negligent in causing the accident. The parties did not stipulate that the collision resulted in White's alleged injuries. Proof or stipulation of negligence and proximate cause does not constitute proof or stipulation of damages. Negligence and causation are two of several

steps prerequisite to compensatory liability. In *McCary v. Caperton*, the Mississippi

Supreme Court tells us:

> Negligence is the word used to describe the conduct of the defendant. For a plaintiff to receive compensation, a cause of action for negligence requires more than negligent conduct. Simple tort theories mandate that a plaintiff must show: (1) a duty to use reasonable care on behalf of the defendant; (2) a breach of that duty by the defendant; (3) causation, or a reasonably close causal connection between the conduct and the resulting injury; and (4) damages in order to recover.

*McCary v. Caperton*, 601 So. 2d 866, 870-71 (Miss. 1992) (Pittman, J., specially concurring). White had the burden of proving any injuries resulting from the accident. *Boling v. A-1 Detective & Patrol Serv., Inc.* 659 So. 2d 586, 590 (Miss. 1995); *Odom v. Roberts*, 606 So. 2d 114, 118 (Miss. 1992). Moreover, in *Odom*, the Mississippi Supreme Court states:

> In determining whether the Odoms met their burden, we view the evidence in the light most favorable to the party in whose favor the jury decided, giving that party all favorable inferences that reasonably may be drawn therefrom. When testimony is contradicted, this Court will defer to the jury, which determines the weight and worth of testimony and the credibility of the witness at trial. If the testimony at trial is uncontradicted, and additionally is "inherently probable, reasonable, credible and trustworthy," this Court will find that the jury must have accepted the evidence as true.

*Odom v. Roberts*, 606 So. 2d 114, 118 (Miss. 1992) (citations omitted).

White's complaint is directed toward the following excerpts in the instructions granted by the trial court:

> [T]he Defendant, Douglas M. Sipe, has admitted that his negligence was the cause of the collision of the vehicle which he was driving with the vehicle in which the Plaintiff, Miona Cook White, was riding as a passenger on September 9, 1991, in Tupelo, Mississippi. (Instruction P-2)
>
>             . . . .
>
> If you find for the Plaintiff, 'We the jury, find for the Plaintiff and assess her damages at $          .'
>
> If you find for the defendant, 'We the jury, find for the Defendant, Michael Sipe.'

White contends it was error for the trial court to allow the jury to find for the Defendant when liability had already been admitted by him. White erroneously equates Sipe's admission of negligence as an admission of damages. The jury was instructed that even though Sipe admitted negligence and proximate cause, "the plaintiff must prove by a preponderance of the evidence that she suffered injuries as a result of the accident." Moreover, the jury was instructed that Sipe was liable only for any injuries caused by the accident, and if plaintiff's damages resulted from something other than the accident, the jury was to find for Sipe. White's argument that Sipe was admittedly "liable" and therefore all the jury had to do was determine the amount of damages is without merit. She bases her argument on an erroneous construction of *McCary v. Caperton*, 601 So. 2d 866 (Miss. 1992). In *McCary*, there was no question as to the defendant's negligence or liability; however, the court allowed the jury to render a verdict in the defendant's favor. *Id.* at 869. One instruction directed a verdict for plaintiff on the defendant's negligence, while another instructed the jury that it could find for the defendant, which it did. *Id.* On appeal, the Mississippi Supreme Court reversed and remanded for a new trial on the basis of the conflicting instructions. *Id.* Significant differences distinguish *McCary* from the case sub judice. The supreme court's basis for reversing is the evident incongruity of the two instructions. Because there was no doubt that the defendant suffered damages caused by the accident, the only question remaining for the jury was the amount of damages. In *McCary*, the supreme court emphasized that there was unrefuted evidence of McCary's injury and loss due to the car accident. "Under these circumstances, the task of the jury was to determine the extent of McCary's injuries and loss, not whether any existed." *Id.* at 870.

In White's case, there was no peremptory instruction on liability. The court's instruction stated that Sipe admitted that his negligence caused the collision, and submitted the issue of causally connected injuries to the jury. The jury's task was greater than the jury in *McCary* because it had to determine the cause of White's injuries in light of the conflicting testimony. This case is very similar to *Southern CATV Systems, Inc. v. Howard*, 237 So. 2d 452, 453 (Miss. 1970). In *Howard*, as in the case below, a motorist brought an action against the driver of another vehicle for injuries allegedly sustained in a rear-end collision. *Id.* The jury declined to award plaintiff any damages. *Id.* On retrial, the jury found for the plaintiff in the amount of $18,000.00. *Id.* The Mississippi Supreme Court reversed and reinstated the verdict from the first trial, stating:

> The question of defendant's negligence proximately causing the collision is not in question. The only issue before the jury in the first trial was (1) whether plaintiff sustained damages as a result of the collision, and (2) if so, what amount should be awarded as compensation therefor. The verdict evidences the findings of the jury that plaintiff sustained no damages.

. . . .

> In *Kellum v. Cooperative Creamery Ass'n, Inc.*, 238 Miss. 731, 120 So. 2d 433 (1960) and *Phillips v. Delta Motor Lines, Inc.*, 235 Miss. 1, 108 So. 2d 409 (1959) it was held that in ordinary negligence cases a cause of action does not arise unless the plaintiff sustained damages. In *Philips v. Delta Motor Lines, Inc.*, *supra*, the Court said:
>
> > In negligence matters, the presence of damage in fact very generally is viewed

as an inherent part of the substantive right. If no actual damage can be shown, no legal wrong is shown, and no award (not even of nominal damages) is proper. 235 Miss. at 14, 108 So. 2d at 415.

*Southern CATV Systems, Inc. v. Howard*, 237 So. 2d 452, 455 (Miss. 1970).

White's argument fails. There was conflicting testimony about the cause of her injuries; therefore liability was a question for the jury. The trial court did not err in instructing the jury it could find for Sipe.

> II. THE PLAINTIFF PROVED BY A PREPONDERANCE OF THE EVIDENCE THAT SHE SUFFERED INJURIES AND DAMAGES AS A RESULT OF THE ACCIDENT ON SEPTEMBER 19, 1991, IN WHICH THE DEFENDANT

> ADMITTED LIABILITY, AND THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

In her brief, White continues to assert that Sipe not only was liable, but that he admitted liability. As we have explained, the questions of injuries and damages proximately caused by the collision were properly left to the jury. White's testimony was not uncontradicted or unrefuted. The evidence presented to the jury left a serious question about the source of her injuries, if they were even injuries at all or simply preexisting conditions aggravated by White's own lack of oral hygeine. Nonetheless, White contends that the verdict was against the overwhelming weight of the evidence because the evidence of her resultant injuries is undisputed. The previous recitation of the facts illustrates that there was evidence of preexisting conditions, some of which were exacerbated by her own poor oral hygiene.

Both Sipe and his wife testified that their car was moving extremely slowly when it side- swiped White's car. Sipe stated that he was driving between 5 and 15 miles per hour, and that the collision with White was extremely slight. When the Sipes checked on White at the accident scene, she was sitting in her car smoking. While White hinted that her back may be injured, she neither mentioned nor in any way indicated that her nose or mouth were injured. She also refused medical attention.

While White's testimony and that of her dentist indicate that she had severe problems with her teeth, there is not any undisputed proof that her plight was a result of the accident. In fact, the evidence is clear that White had a history of mouth problems including numerous fillings, root canals and TMJ. Two different dentists pleaded with her to take care of her mouth and remarked on her zero efforts at oral hygiene. The same is true of White's nose troubles. She claimed that the force of the collision with Sipe slammed her face into the dashboard of her car, therefore causing severe trauma to her nose. However, the doctor who operated on her nose stated that the defect of which she complained (her crooked nose) would have been caused by an impact from the side, not the front. Moreover, White had a broken nose two years earlier, and her nose was bumped out of alignment by her child.

As far as White's claims of back injury, there is no conclusive evidence that her back was injured.

White testified that she hurt her back, as did her mother and her baby sitter. Aside from that testimony, the only other evidence presented was a bill from a chiropractor, but no evidence linking that bill with alleged injury due to the accident. Additionally, White admitted to being in several previous car accidents. In one such accident she testified that she had hurt her back. She even spent time in a soft collar for her injuries.

White had the burden of proving her injuries, damages, and loss of income by a preponderance of the evidence. *Odom v. Roberts*, 606 So. 2d 114, 118 (Miss. 1992). In determining whether White met her burden, this Court views the evidence "in the light most favorable to the party in whose favor the jury decided, giving that party all favorable inferences that reasonably may be drawn therefrom." *Id.* "When testimony is contradicted, this Court will defer to the jury, which determines the weight and worth of testimony and the credibility of the witness[es] at trial." *Id.*

Under the facts adduced, the jury was justified in finding for the Defendant. The verdict was not against the overwhelming weight of the evidence. We affirm.

**THE JUDGMENT OF THE LEE COUNTY CIRCUIT COURT IN FAVOR OF MICHAEL SIPE IS AFFIRMED. COSTS ARE ASSESSED AGAINST APPELLANT.**

**BRIDGES AND THOMAS, P.JJ., BARBER, COLEMAN, DIAZ, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**

**McMILLIN, J., NOT PARTICIPATING**.