## NANCY SOTHORON *v.* JOSEPHINE L. WEST

[No. 17, April Term, 1942.]

540

*Decided April 29, 1942.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*H. Mortimer Kremer*, with whom was *Herbert Myerberg* on the brief, for the appellant.

*William Saxon* for the appellee.

MARBURY, J., delivered the opinion of the Court.

A suit at law, tried in the Superior Court of Baltimore City before the court without a jury. From a judgment

in favor of the defendant for costs, the appeal comes here under Gen. Rules of Prac. & Proc., 1941, Part Three, III, Rule 9 (c), and is taken and heard according to equity practice.

The plaintiff sues for damage to her automobile, caused by a collision with that driven by the defendant. The facts are not disputed. The plaintiff had stopped on Belvedere Avenue near its intersection with Falls Road in the City of Baltimore, to wait for the traffic light there to turn. There were two cars in front of her, also waiting for the light to turn. While she was sitting there, the car driven by the defendant struck her car in the rear. The damage thus caused to her car was $123.55. The negligence alleged in the declaration is that the car was being operated by the defendant without adequate brakes.

Belvedere Avenue approaches Falls Road at a very steep grade. The defendant testified that she started down the hill at fifteen miles an hour, that she was coasting down the hill, that at the top of the steep incline she started to put on the brake, had it all the way down to the foot boards and realized it was not working. She asked her companion to pull the hand brake, he did, this did not hold, and as a result, she hit the plaintiff's car in the rear.

The defendant was not driving a car of her own. The car belonged to the father of her companion. He brought the car to her house, and offered it to her to take his son for a drive. The son did not have an operator's license. The father got out of the car on Calvert Street, near North Avenue, and then the defendant started driving. They went north on Calvert, over to Roland Avenue, then to Belvedere Avenue and down Belvedere Avenue towards Falls Road, when the accident happened. The defendant said in her testimony: "We were coming down the hill and everything seemed to be perfectly all right; I had no use for the brake, particularly before that; I mean no hill or incline like that, and as we got to the top of the hill I put my foot on

the brake and realized it was not going to hold, and I called to Bob to put the hand brake on and that did not hold either, and I pulled to the right and hit the back of Miss Sothoron's car." In response to a question by the court when she first found the brakes were defective, she said: "That was just at the top of that steep incline * * *."

The court below said in his statement of the grounds for his decision in favor of the defendant: "In this case the question goes back to whether Miss West knew or should have known whether the car she was operating was in a defective condition. I do not find any evidence to indicate that, so as between herself and Miss Sothoron, why it just seems that the case should be decided in favor of the defendant, Miss West." And also: "If, earlier in the ride, she had occasion to use the brakes and had been put on notice of their defective condition, but continued to drive, it might be a different story, but I noticed the testimony specifically and she covered that point. She had no occasion to apply the brakes until the time she went down the hill."

It is the duty of one operating a motor vehicle on the public highways to see that it is in reasonably good condition and properly equipped, so that it may be at all times controlled and not become a source of danger. *Huddy, Automobile Law*, 9th Ed., Vol. 3-4, p. 127.

In *Blashfield's Cyclopedia of Automobile Law and Practice*, Perm. Ed., Vol. 2, Sec. 826, it is said: "One operating an automobile on the streets or highways is bound to take notice that he may be called upon to make emergency stops; and, even in the absence of express regulation, the driver is required, in the exercise of reasonable care, to have his car equipped with brakes in such condition that they can, by the use thereof, aid in stopping or controlling the speed of the car."

In Maryland, we have the express regulation contained in Code, 1939, Art. 56, Sec. 194 (1), which reads: "Every motor vehicle, except trailers and sidecars, while

in use on the public highways of this State, shall be provided with adequate brakes."

In some States having similar statutes, it has been held that driving with defective brakes is negligence *per se.* See *William E. Harden, Inc. v. Harden,* 1940, 29 Ala. App. 411, 197 So. 94; *Kamper Grocery Co. v. Sauls,* 1928, 38 Ga. App. 487, 144 S. E. 403. The better and more general rule, however, seems to be that failure of brakes to operate makes only a *prima facie* case, which the driver may defend by showing proper inspection and a sudden failure without warning. *Lochmoeller v. Kiel,* Mo. App., 137 S. W. 2d 625; *Landry v. Hubert,* 101 Vt. 111, 411 A. 593, 63 *A. L. R.* 396; *Scheer v. Melville,* 279 Pa. 401, 123 A. 853; *Delair v. McAdoo,* 324 Pa. 392, 188 A. 181; *Hanson v. Weckerle,* 18 Cal. App. 2d 214, 63 P. 2d 322; *Joyce v. Brockett,* 205 App. Div. 770, 200 N. Y. S. 394; *Guile v. Snyder,* 165 Ark. 221, 263 S. W. 403; *Petersen v. Seattle Automobile Co.,* 149 Wash. 648, 271 P. 1001; *Co-operative Furniture Co. v. Southern Surety Co.,* Tex. Civ. App, 264 S. W. 201; *Rath v. Bankston,* 101 Cal. App. 274, 281 P. 1081; 5th *Am. Jur., Automobiles,* Par. 252.

The kind of inspection required is stated in *Re-statement of the Law of Torts, Negligence, Par.* 300, and comment (c. Inspection), as that which a reasonable man should recognize as necessary. There it is also said: "The actor's negligence lies in his act of using the defective instrument without adequate inspection, not in his omission to perform his duty of inspection."

The appellee offered as an excuse for the accident the fact that her brakes did not hold. She offered no evidence of any inspection. She testified to a drive which carried her through a number of city blocks and intersections. It is almost inconceivable that during the course of such a drive she did not at some time or other have occasion to use the foot brake. Her testimony, however, negatives this. The question before us, therefore, is whether the fact that her brakes suddenly failed her

excuses her from the charge of negligence, when she has driven a number of city blocks without making the slightest test of these brakes, until their first use in the descent of a steep hill, where she has to rely on them for her safety and for the safety of other occupants of the highway.

We do not think the appellee is excused. This is not the case of a latent defect which could not have been discovered. A person driving a strange car for the first time owes a duty to the public to see that there are no obvious defects in its mechanism which are apt to cause injury to others. Defective brakes are obvious, because they can be detected by the simple pressure of a foot. The test is so simple that anyone can make it. If such a test shows the brakes in working order, and then they suddenly fail, the driver may not be liable for negligence in driving with them. If no test is made, if the brakes are not even tried, the driver cannot rely upon a presumption that the machine is safe. He will not then be excused from liability for the destruction he may cause upon the public highway, because he did not know his brakes were bad.

For the reasons stated, the judgment will be reversed, and in accordance with the rule, a judgment will be entered for the appellant against the appellee for $123.55, with interest from the date of trial, and costs here and below.

*Judgment reversed. Judgment entered for appellant against appellee for $123.55 with interest from February 2, 1942, and costs below and here.*