FINK *v.* EAST MISSISSIPPI ELECTRIC POWER ASSN.

No. 40867 October 13, 1958 105 So. 2d 548

*Beard, Pack & Ratcliff,* Laurel; *Wilbourn, Wilbourn & Lord,* Meridian, for appellant.

*Welch, Gibbes & Graves, Melvin, Melvin & Melvin,* Laurel; *Floyd, Cameron & Dean,* Meridian, for appellees.

GILLESPIE, J.

This is an appeal from a jury verdict and judgment for all defendants in an action wherein damages were

sought for the alleged wrongful death of Ralph S. Fink, who lost his life in an automobile accident.

Mrs. Alice Fink, the appellant, widow and sole heir at law of Ralph S. Fink, deceased, filed suit below against appellees, East Mississippi Electric Power Association and its servant and driver, Brewer, and R. N. McElroy and his servant and driver, Barber, and Billy Ralph Ousley. The first trial resulted in a jury verdict for all defendants. The lower court set aside the verdict and granted a new trial. The second trial resulted in a verdict for all defendants and judgment was entered accordingly, and plaintiff prosecuted this appeal.

For brevity, we refer to the truck operated by Brewer for East Mississippi Electric Power Association as the Brewer truck, and the truck operated by Barber for R. N. McElroy as the Barber truck.

The jury verdict for defendants below resolved all conflicts in the testimony in their favor.

As the Brewer truck proceeded south along paved Highway No. 15 about eight miles south of Louisville, Mississippi, it slowed down to about 30 miles an hour just before or at about the time it reached a slight curve at the crest of a hill, which was about 125 yards north of a dirt road running west into which Brewer intended to turn. At this time, the Barber truck was 150 or 200 feet behind the Brewer truck. Brewer drove at diminished speed part of the way down the slight grade and began slowing down to make his right turn, and as he descended the hill he gave both an arm signal and an electric blinker signal of his intention to turn right. Barber had been following and slowly gaining on the Brewer truck for several miles. When Barber reached the crest of the hill above mentioned, he noticed that he was gaining on the Brewer truck faster than previously and saw that Brewer was slowing down. Although Barber did not see Brewer's turn signals, he observed the slowing of the Brewer truck and began slowing his truck since he saw that a yellow line to the right of center

started some distance ahead, and which prohibited Barber from passing Brewer. The Barber truck closed the distance between it and Brewer's truck until Barber was a short distance behind Brewer as they approached the dirt side road. Barber did not give any signals of his intention to slow down because, situated as he was, he did not have time to do so. Both the Brewer and the Barber trucks slowed down without a sudden deceleration and did not skid their wheels. Neither truck stopped until after the collision. About the time that Brewer had made his turn onto the side road and Barber was proceeding south along the west lane of the highway near the road Brewer had turned into, Barber heard tires screeching behind him, and immediately thereafter two automobiles collided headon in the east lane of the highway 71 feet north of the road into which Brewer had turned. These two automobiles were the Ousley's, traveling south, and Fink's, driven by one Nelson, traveling north. Ralph S. Fink was killed in the collision.

There was no evidence of probative value tending to show that the driver of the Fink automobile was negligent in any manner. Nelson was operating the Fink automobile at a speed of about 40 miles per hour and had slowed down to some extent when the Ousley automobile suddenly pulled out from behind the Barber truck directly into the east lane and in front of the northbound Fink automobile.

Ousley, according to his own testimony, was following the Barber truck by about 75 or 100 feet and "just before the accident occurred, I realized that the (Brewer) truck in front had made a sudden stop, and the second truck was also making a very sudden stop"; that neither truck gave any signal; that Ousley was not able to bring his automobile to a stop behind the Barber truck; that he, Ousley, realized that he would either have to go off the fill to the right, hit the Barber truck, or turn to the left into the northbound traffic lane; that he decided to take his chances in his lefthand traffic lane and cut into the

left lane just before he reached the Barber truck; that he never did see the Fink automobile approaching from the south. Ousley testified that he hit his brakes as hard as he could and saw that his brakes would not stop his automobile before he hit the Barber truck. Ousley stated that he had no trouble with his brakes driving from Oxford, Mississippi to the place of accident, and that his brakes had been working properly.

The road was straight for about 300 feet from the scene of the accident to the crest of a hill to the south. Ousley admitted he did not see the Fink automobile until he had gotten into the east lane.

There was no proof offered by Ousley as to why his brakes did not hold. The proof showed without dispute that the left front tire of the Ousley car skidded a distance of 35 feet beginning in the west lane and ending at the place of impact in the east lane. The Fink automobile laid down skid marks 45 feet 9 inches before colliding with Ousley's, and these skid marks showed that the left wheels of the Fink automobile were 40 inches east of the center of the highway as it proceeded north. It was shown without dispute that the highway patrolman tested the brakes on the Fink and Ousley automobiles after the wreck and before the vehicles were moved. The foot brakes on the Fink automobile had full pedal and the foot brakes on the Ousley's had only one and one-half inches of pedal. There was no proof on behalf of Ousley that his emergency brakes were not in working order or that Ousley made any attempt to use his emergency brakes.

Appellant contends that the verdict of the jury is against the overwhelming weight of the evidence and that the case should be reversed and a new trial granted as to all of the appellees. A review of the evidence leads to the conclusion that as to East Mississippi Electric Power Association and its driver and servant, Brewer, and R. N. McElroy and his driver and servant, Barber,

the jury was justified in finding that they were not guilty of negligence contributing to the accident and resulting death of Mr. Fink. It is argued with considerable force that the two truck drivers were negligent because they did not remember seeing the Fink automobile, but neither driver turned his truck into the northbound lane of traffic, and if the truck drivers were negligent in this regard, the jury was fully justified in finding that such negligence in no way contributed to the accident.

██ ██ We are of the opinion that the overwhelming weight of the evidence shows that Ousley was negligent, and that his negligence was the proximate cause of the accident and resulting death of Mr. Fink.

██ ██ Assuming that Ousley was confronted with a sudden emergency and was entitled to invoke the sudden emergency rule (a question discussed in another part of this opinion), the law requires that after the emergency arose Ousley should have exercised such care as a reasonably prudent and capable driver would use under the unusual circumstances. ██ ██ When Ousley was confronted with the alternatives of turning right, striking the Barber truck, or turning to his left into the northbound traffic lane, he chose the latter alternative without first ascertaining whether a vehicle was occupying the northbound lane. His excuse that he did not see the Fink automobile coming from the south because he was behind the trucks is untenable. It was a heavily traveled highway. The east lane of the highway was for northbound traffic, and Ousley was bound to anticipate that a vehicle would likely be traveling north in the east lane. If Ousley had kept a proper lookout he should have known of the presence of the Fink automobile. Even when viewed in the light most favorable to Ousley, the evidence overwhelmingly shows that he was guilty of negligence proximately causing the accident when he drove his automobile into the east lane without first ascertaining that there was no vehicle approaching from

the south. The proof is overwhelming that the shoulder of the highway to the west of the scene of the accident was wide enough to accommodate an automobile.

The lower court granted appellee Ousley the following instruction, which appellants say was error:

"The Court instructs the jury for the defendant, Billy Ralph Ousley, that if you believe from a preponderance of the evidence in this case that at the time of the collision the defendant, Billy Ralph Ousley, turned his car abruptly to the left because of the sudden failure of his brakes to properly function, and he had no prior knowledge of the defect, if any, and that all (sic) the time he was confronted with a sudden emergency, not of his own making, and caused by the sudden stopping or slowing, if any, of the vehicles ahead of him, and that he acted as a reasonable, prudent person under like circumstances, then the collision insofar as Ousley was concerned was unavoidable, and you should find for the defendant, Billy Ralph Ousley."

To sustain his position under the sudden emergency rule, insofar as brake failure was concerned, it was necessary for Ousley to prove: That his automobile was equipped with two separate means to stop his vehicle, Section 8249, Code of 1942; that he did not know, and in the exercise of reasonable care could not have ascertained, that there were any defects in his braking systems likely to produce an accident; that he made reasonable efforts to use both braking systems; that both systems suddenly failed, or that upon sudden failure of the foot brakes he could not, in the exercise of reasonable effort, stop the automobile with the emergency brakes; and that after the emergency arose he exercised such care as a reasonably prudent and capable driver would use under the unusual circumstances. Moore v. Taggart (Miss.), 102 So. 2d 333.

The proof in this case did not justify the granting of the instruction. The proof did not show that the

Ousley automobile was equipped with two separate means to stop the automobile as required by statute. The proof as to Ousley's lack of knowledge of brake defects was not sufficient. He merely showed that his brakes (obviously the foot brakes only) had worked satisfactorily for rest stops and traffic light stops in driving from Oxford to the scene of the accident. The proof shows without dispute that after the accident the Ousley automobile had only one and one-half inches of pedal. Ousley did not show that the condition of his brakes after the accident was different from their previous condition. There was no proof that Ousley made any attempt to use the emergency braking system or that the emergency brakes were defective. There was no showing of a sudden brake failure such as the breaking of a cylinder or brake line as was the case in Moore v. Taggart, supra.

 Furthermore, the instruction was erroneous in that it erroneously assumed by the use of the words "failure of his brakes properly to function" that there was evidence that both braking systems were defective. The instruction also omits the requirement that Ousley could not have ascertained the defective condition of the brakes in the exercise of reasonable care. This requirement assumes considerable importance in this case in view of the condition of Ousley's brakes after the accident without proof that previously they were in a different condition, and because there was no showing of any sudden breaking of some part of the braking system.

All other contentions of the parties have received careful consideration but need not be discussed. The case is affirmed as to all appellees except Ousley. It is reversed and remanded for a new trial as to appellee Ousley.

Affirmed in part, reversed in part, and remanded.

*Roberds,* P. J., and *Hall, Holmes* and *Ethridge,* JJ., concur.