JAMES T. EFFLER ET UX. *v.* MURIEL
A. WEBBER ET VIR

[No. 710, September Term, 1972.]

*Decided June 11, 1973.*

The cause was argued before MORTON, MOYLAN and GILBERT, JJ.

*Kevin J. Baldwin,* with whom was *John A. Buchanan* on the brief, for appellants.

*Francis J. Ford,* with whom was *William D. Foote, Jr.,* on the brief, for appellees.

GILBERT, J., delivered the opinion of the Court.

On the night of January 22, 1971, when James T. Effler, one of the appellants, halted a motor vehicle in obedience to a traffic signal situate at the intersection of East-West Highway and Riggs Road, in Prince George's County, Maryland, he unwittingly set the stage for a drama in which he was to play the principal role.

Effler stopped the automobile that he was driving in the center lane of the three lane westbound portion of East-West Highway. The third lane is for the purpose of turning left onto Riggs Road. As he sat in the car waiting for the traffic signal to change, he heard the wail of a siren somewhere behind him. He first looked into the rear view mirror and then looked around. Effler saw stopped motor vehicles in the traffic lanes to his left and to his right. Behind him was another automobile, and immediately behind that car was a police vehicle that had its siren sounding and its "twin beacon" lights flashing.

Effler, aware of the existence of Md. Ann. Code Art. 66½, § 11-202 [1], and equally aware of § 11-405 [2], was perplexed. He knew he had to get out of the way of the emergency vehicle, but he was still confronted with a traffic light showing red. Effler testified, "So I was undecided at first what to do and

---

1. § 11-202 (a) (3) a, as it then provided, states:

   "Vehicular traffic facing a steady red signal alone shall stop . . . and traffic shall remain standing until a green indication is shown. . . ."

This section was amended, effective July 1, 1972. Ch. 497, [1972] Md. Laws.

2. § 11-405(a) provides:

   "Upon the immediate approach of an authorized emergency vehicle making use of audible and visual signals meeting the requirements of § 12-218, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the edge or curb of the roadway clear of any intersection and shall stop and remain in this position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer."

then I decided — and the man behind me blew his horn to move into the intersection and I blew my horn and moved into the intersection. Traffic was already stopping, because of the lights behind me."

Riggs Road is a six lane highway in addition to its turn lanes. It runs generally north and south. The northbound traffic on Riggs Road was stopped as was the southbound traffic as far as Effler could see. Effler's speed as he proceeded to cross the intersection was, according to the police officer who was in the emergency vehicle, approximately five to ten miles per hour. Effler looked straight ahead and continued to do so as he crossed over three northbound lanes and the easternmost southbound through-lane. Mrs. Muriel A. Webber, one of the appellees, was operating her vehicle southbound on Riggs Road in the second lane of traffic. She entered the intersection, and her car was struck in the side by Effler's vehicle. The police officer estimated the speed of Mrs. Webber's automobile at thirty miles per hour. At the scene of the accident Mrs. Webber stated she did not see the flashing lights on the police vehicle; nor did she hear the siren until the moment of the impact with Effler's car.

Effler sustained personal injuries, and he brought suit to recover damages in the Circuit Court for Prince George's County. The case was removed to Calvert County for trial. The only issue presented to the jury was the question of "liability." At the conclusion of Effler's [3] presentation of evidence, the trial judge granted the Webbers' [4] motion for a directed verdict in favor of the Webbers on the ground that Effler was guilty of contributory negligence as a matter of law.

The obvious question posed to this Court is whether the reasonableness of an individual's reaction to an emergency situation is a question of fact for the jury's determination or one of law for the trial judge to decide.

---

3. Mrs. Effler was a party plaintiff below but was not involved on the issue of "liability."

4. Both Mr. and Mrs. Webber were made parties defendant below.

In *Warnke v. Essex*, 217 Md. 183, 141 A. 2d 728 (1958), the Court of Appeals considered a set of facts wherein Warnke was operating her vehicle in one direction and Essex was proceeding in the opposite direction. Essex crossed over the center line of the highway, and, in spite of Warnke's efforts to avoid a collision, the two cars collided. A disinterested witness testified that another vehicle, otherwise unidentified, "swerved in front" of Essex. When Essex applied his brakes, he apparently lost control of his car and a collision occurred. There, the trial court granted a directed verdict in favor of Essex at the conclusion of Warnke's case on the ground that Essex had been confronted with a sudden emergency. The Court reversed, and said, at 186-187:

> "Generally, the operator of an automobile who suddenly finds himself in a position of peril is not required to exercise the same care as when he has ample time to reflect upon the course of action he should pursue. . . .
>
> The relevant inquiry, then, is whether an ordinarily prudent person would have acted in the same manner as the defendant did in this case. The mere fact that a person finds himself in a predicament or emergency does not automatically relieve him of the obligation to use ordinary care. The amount of care might change, of course, but the degree or standard of *ordinary care* is always the same, *i.e.*, the care that would be used by an ordinarily prudent person under the same circumstances, the emergency itself always being considered and weighed as one of the circumstances. See 2 *Harper and James, Law of Torts* (1956), § 16.11, and *Prosser, Torts* (1955), § 32."

*See also Virginia Freight Lines, Inc. v. Montgomery*, 256 Md. 221, 260 A. 2d 59 (1969).

It is further stated in *Warnke*, at 187:

> "Whether the operator of an automobile was

confronted with an emergency, and whether he
acted negligently under the circumstances, are
generally questions for the jury. 10B · *Blashfield,
Automobile Law and Practice* (1957), § 6648."

The Court in *Warnke* reversed because it concluded that the
evidence produced at the point where the directed verdict
was granted was not sufficient to establish that Essex was
confronted with the existence of an emergency as a matter
of law. They said, at 188:

"On the contrary, under the facts and circum-
stances shown, the existence or non-existence
of an emergency was clearly a jury question. It
is also clear that the question whether the defen-
dant acted reasonably under the stress of the
emergency — if in fact an emergency did exist
— was also a question for the jury to decide. See
*Robertson v. State, use of Meyer,* 216 Md. 175, 139
A. 2d 715 (1958); *Baker v. Shettle,* 194 Md. 666, 72
A. 2d 30 (1950); *Fogle v. Phillips,* 191 Md. 114, 60 A.
2d 198 (1948); *Harner v. Russell,* 185 Md. 519, 45 A.
2d 273 (1946); and *Newman v. Stocker,* 161 Md. 552,
157 A. 761 (1932)."

Unlike the facts in *Warnke,* the record before us indicates
that the existence of an emergency was undisputed. Rather,
it is the reaction to that emergency that is in dispute.

This Court, in *Armstrong v. Johnson Motor Lines, Inc.,* 12
Md. App. 492, 501, 280 A. 2d 24 (1971), stated:

"Proof by a party that he acted as he did because
he was confronted with an emergency, to which he
did not contribute, and which he could not have
foreseen by the exercise of reasonable care,
becomes one of the circumstances surrounding the
entire occurrence, and focuses the inquiry on the
question of whether he exercised due care *under
those circumstances.* He is to be judged, not by
hindsight, but in the light of the alternatives
available to him in that emergency, and the time

available to him to recognize and evaluate those alternatives, and to make the choice of a reasonable, prudent person. Whether he was negligent in the action he took in the face of the emergency, or whether he used reasonable care *under the circumstances* is ordinarily a jury question, *Lehmann v. Johnson*, 218 Md. 343, 146 A. 2d 886 [(1958)]."

In the instant case, we are cognizant that it might be argued that Effler could have driven his vehicle to a point in front of the automobiles that were to his sides at the time the emergency arose, thus clearing the way for the police vehicle and presumably avoiding a collision with another automobile. Whether Effler acted negligently under the circumstances, however, is, as stated by both the Court of Appeals in *Warnke, supra,* and *Virginia Freight Lines, Inc. v. Montgomery, supra,* and by this Court in *Armstrong, supra,* a question of fact for the jury to resolve. It is for them to determine whether *vel non* a reasonably prudent man confronted with the same circumstances would have reacted in similar fashion.

Professor Prosser's *Handbook of the Law of Torts* (3rd Ed. 1964), Ch. 5, § 33 says, at 171-172:

" . . . [I]t seems clear that the basis of the special rule [emergency doctrine] is merely that the actor is left no time for thought, or is reasonably so disturbed or excited, that he cannot weigh alternative courses of action, and must make a speedy decision, based very largely upon impulse or guess. Under such conditions, the actor cannot reasonably be held to the same conduct as one who has had full opportunity to reflect, even though it later appears that he made the wrong decision, which no reasonable man could possibly have made after due deliberation. His choice 'may be mistaken and yet prudent.' " (Footnotes omitted).

Appellees perceive from Mr. Effler's testimony, quoted

within, evidence of a careful contemplation of "what action to take" under then existing circumstances. We do not impute to Mr. Effler's words the same meaning as do the appellees. It is apparent that Effler reacted to the stress of an emergency. An emergency having been shown by the evidence, it was for the jury and not the court to determine whether or not Effler's actions were those of a reasonably prudent man under similar circumstances. *Virginia Freight Lines, Inc. v. Montgomery, supra; Warnke v. Essex, supra; Armstrong v. Johnson Motor Lines, Inc., supra.*

We think the trial judge erred in granting the Webbers' motion for a directed verdict on the ground that Effler was guilty of contributory negligence as a matter of law. The question of Effler's actions in response to the emergency was clearly a question of fact to be determined by the jury.

Although the point was not raised, we cannot help but note from the record before us that while the testimony is clearly indicative of Effler's entering the intersection against the traffic signal device, there is no evidence that the signal was still red for Effler at the time of impact. Nor is there any evidence establishing whether *vel non* Mrs. Webber entered the intersection with the signal light in her favor.

*Judgment reversed.*
*Case remanded for a new trial.*
*Costs to be paid by appellees.*