CHARLES L. MILLER ET AL. *v.* KATHLEEN
THERESA REILLY ET AL.

[No. 816, September Term, 1973.]

*Decided May 29, 1974.*

466

The cause was argued before MOYLAN, POWERS and GILBERT, JJ.

*Robert R. Michael,* with whom were *Alan D. Massengill* and *Massengill & Michael* on the brief, for appellants.

*William D. Foote, Sr.,* with whom was *Francis J. Ford* on the brief, for appellees.

GILBERT, J., delivered the opinion of the Court.

In July, 1972, Kathleen Theresa Reilly, appellee, then a student at Prince George's Community College, lived with her parents in an area not accessible by public transportation. Her father, John E. Reilly, the other appellee, purchased in September of 1971, a 1965 Comet for his daughter's use, primarily in going back and forth from school. Kathleen enjoyed the almost exclusive use of the vehicle.

On the night of July 7, 1972, Kathleen who had obtained a summer job as a salesperson, had left her place of work and was en route home. She was traveling on Riggs Road and when nearing University Boulevard was descending a hill. Kathleen observed that a traffic signal situated at the intersection of Riggs Avenue and University Boulevard was "red" for her. She applied the foot brake and to her dismay the pedal "went right to the floor." She was, in short, without foot brakes. Kathleen maneuvered her car from the center lane of the three lane northbound highway into the right hand or right turn lane. The vehicle continued down

the grade. At the bottom of the hill Kathleen attempted to complete a right turn onto University Boulevard, but apparently the momentum of the car prevented a successful turn. Her car jumped the median strip and collided with a 1965 Buick that was westbound on University Boulevard. The force of the impact rolled the Buick onto its right side. Both occupants of the Buick sustained personal injury.

At a trial before Judge Robert B. Mathias and a jury in the Circuit Court for Prince George's County, the judge denied motions for directed verdict made in behalf of the respective parties and submitted the controversy to the jury. The jury rendered verdicts in favor of the defendants-appellees.

The appellants, Charles L. Miller and Anthony L. Rowek, vigorously attack, in this Court, Judge Mathias's denial of their motions for a directed verdict against Kathleen because she (1) failed to demonstrate, at trial, that she had tested the foot brake prior to the accident and, (2) failed to use the "emergency brake" when she had an opportunity to do so. Appellants also allege (3) reversible error because the judge instructed the jury on the "sudden emergency doctrine", notwithstanding Kathleen's failure to use the "emergency brake", and (4) that the judge erred in instructing the jury on the "sudden emergency doctrine" because the appellees did not demonstrate their "vehicle was equipped with a separate independent braking system."

I

To bolster their argument that Judge Mathias erred in not granting a motion for a directed verdict against Kathleen "due to her failure to demonstrate prior testing by the simple foot pressure test", the appellants cite us to *Sothoron v. West,* 180 Md. 539, 26 A. 2d 16 (1942) and its *sequelae.* In *Sothoron* Judge Marbury for the Court said, at 543-44:

> "The appellee offered as an excuse for the accident the fact that her brakes did not hold. She offered no evidence of any inspection. She testified to a drive which carried her through a number of city blocks and intersections. It is almost

inconceivable that during the course of such a drive she did not at some time or other have occasion to use the foot brake. Her testimony, however, negatives this. The question before us, therefore, is whether the fact that her brakes suddenly failed her excuses her from the charge of negligence, when she has driven a number of city blocks without making the slightest test of these brakes, until their first use in the descent of a steep hill, where she has to rely on them for her safety and for the safety of other occupants of the highway.

We do not think the appellee is excused. This is not the case of a latent defect which could not have been discovered. A person driving a strange car for the first time owes a duty to the public to see that there are no obvious defects in its mechanism which are apt to cause injury to others. Defective brakes are obvious, because they can be detected by the simple pressure of a foot. The test is so simple that anyone can make it. If such a test shows the brakes in working order, and then they suddenly fail, the driver may not be liable for negligence in driving with them. If no test is made, if the brakes are not even tried, the driver cannot rely upon a presumption that the machine is safe. He will not then be excused from liability for the destruction he may cause upon the public highway, because he did not know his brakes were bad."

*Sothoron*, however, is readily distinguishable as there is in *Sothoron* no testimony whatsoever of the driver's use of the foot brake at any time prior to its failure immediately preceding the collision. The record in the instant case, however, reveals that Kathleen, the usual operator of the Comet, testified on direct examination:

"Q. . . . Prior to the time when your brakes went out . . . on Riggs Road, . . . as you were approaching the intersection of University Boulevard . . . did you have any trouble with your brakes?

A. No, sir.

Q. Had you ever noticed any difficulty in braking or slowing your vehicle to a stop?

A. No, sir."

On cross-examination she was asked:

"Q. ... [Y]ou testified that you had had no prior problems with the brake, is that what I am to understand?

A. Yes, sir."

Then on redirect Kathleen deposed:

"Q. ... [You were asked] about school and summer employment. ... Where indeed were you coming from when this accident happened?

A. From my summer employment.

* * *

Q. ... What kind of a job did you have over there?

A. Sales person.

Q. What were your hours?

A. That night?

Q. Yes.

A. That night it was from 12:30 to 9:30.

Q. So, you were on your way home from work is that right?

A. Yes, sir.

Q. And, did you usually drive to and from work in the Comet?

A. Yes, sir.

Q. And, now that day going to the [place of employment] and then again returning and prior to the time that you had the brake failure had you had any trouble with the car or the brakes?

A. No, sir."

Such testimony is in our view sufficient to submit the question of Kathleen's use of the brakes on the date of the accident to the jury for its determination. We point to the fact that on the day of the accident Kathleen drove the Comet to work. She worked that day for nine hours. It is obvious if she drove to work and then actually worked in a department store she of necessity would have had to apply the brakes of the car in order to halt it when she arrived at her place of employment. Furthermore, there was testimony that new brakes had been installed on the Comet at the time of purchase and, the vehicle had only been driven 6,000 miles following the installation of the brakes in the "early fall of 1971." John Reilly informed the jury that he periodically drove the Comet in order to inspect it, and that in June, 1972, he took the vehicle to a service station for an oil change. While there he noticed that the brakes "were down a little", and in order to correct that he "had the brakes adjusted to bring them back up to where they should be." Such testimony on the part of the defendants-appellees is similar to that present in the case of *Garfinkle v. Birnios*, 232 Md. 402, 194 A. 2d 91 (1963), where there was evidence that the brakes had been inspected several weeks before the accident. The Court of Appeals in *Garfinkle* indicated that an instruction to the jury that when a defendant has made proper inspection of the brakes of his vehicle, and the jury so finds, then the law is that if the brakes were "in working order and then they suddenly fail, the driver may not be liable for negligence in driving with them." To the same effect *see Larsen v. Romeo*, 254 Md. 220, 255 A. 2d 387 (1969).

Judge J. DeWeese Carter (specially assigned) wrote for the Court of Appeals in *Wood v. Johnson*, 242 Md. 446, 219 A. 2d 231 (1966), at 454:

" . . . [T]hat the showing of a brake failure makes a prima facie case of a violation of § 291 of Article 66½[1] and, if such violation is further shown to be the proximate cause of the accident, the then

1. Now recodified as Md. Ann. Code Art. 66½, § 12-301 and § 12-304.

permissible inference of negligence must be controverted by a showing of adequate inspection and a sudden unexpected failure."

Sudden brake failure is a fact of motoring life; it is unfortunately a part of our mechanized society. Because machines are known to break without prior warning, automobiles should be periodically inspected by the owners. Indeed, *Wood v. Johnson, supra,* flatly states that a defendant-owner is under a greater responsibility to inspect and test a vehicle than one who is a mere operator. *See also Kaplan v. Stein,* 198 Md. 414, 84 A. 2d 81 (1951). The routine inspection is not a panacea, however, for all dangerous conditions. The latent defect may still go undetected, but a routine examination does minimize the chance that that which should be readily discovered and corrected will not go undiscovered and uncorrected.

We believe that the evidence in this case was sufficient to satisfy the requirements of both *Sothoron* and *Wood.* Therefore, we perceive no error by Judge Mathias in refusing to direct a verdict for the appellants.

## II and III

The appellants' second and third arguments, though couched in slightly different language, are so interrelated that we shall treat them as one. The appellants argue that the trial judge erred in refusing to grant a directed verdict in their favor because of Kathleen's failure to use the "emergency brake" when she had an opportunity to do so prior to the collision, and because of such an opportunity, the trial court should not have instructed the jury on the "sudden emergency doctrine". In this connection the appellants contend that Kathleen had ample time between the discovery of the foot brake failure and actual collision to apply the "emergency brake" (we observe that Md. Ann. Code Art. 66$^1$/$_2$, § 12-301 does not use that nomenclature but rather refers to it as the "parking brake") so as to bring her vehicle to a stop. The answer to the appellants' contention is found in *Warnke v. Essex,* 217 Md. 183, 141 A. 2d 728 (1958), which was expounded upon in *Armstrong v. Johnson Motor*

*Lines,* 12 Md. App. 492, 280 A. 2d 24 (1971), and reiterated in *Effler v. Webber,* 18 Md. App. 162, 305 A. 2d 485 (1973). The *Warnke* Court held at 187:

> "Whether the operator of an automobile was confronted with an emergency, and *whether he acted negligently under the circumstances, are generally questions for the jury.* 10B *Blashfield, Automobile Law and Practice* (1957), § 6648." (Emphasis supplied).

This Court in *Armstrong* said, at 501:

> "Proof by a party that he acted as he did because he was confronted with an emergency, to which he did not contribute, and which he could not have foreseen by the exercise of reasonable care, becomes one of the circumstances surrounding the entire occurrence, and focuses the inquiry on the question of whether he exercised due care *under those circumstances.* He is to be judged, not by hindsight, but in the light of the alternatives available to him in that emergency, and the time available to him to recognize and evaluate those alternatives, and to make the choice of a reasonable, prudent person. Whether he was negligent in the action he took in the face of the emergency, or whether he used reasonable care *under the circumstances* is ordinarily a jury question. *Lehmann v. Johnson,* 218 Md. 343, 146 A. 2d 886 [(1958)]."

In *Effler,* we said that whether a driver, confronted with a sudden emergency, acted negligently under the circumstances is a question of fact for the jury to determine. It may be, as appellants suggest, that Kathleen could have applied the parking brake and brought her vehicle to a halt. She might have attempted to "motor brake" the vehicle by downshifting the gears, or she possibly could have turned the vehicle into a curb in an effort to stop it. Perhaps she could have avoided the collision by sounding the horn or

blinking the headlights. It is, of course, comparatively easy to "second guess" or "Monday Morning Quarterback" a motorist who is confronted by a sudden emergency, but as Judge Powers said in *Armstrong, supra,* the driver is not to be judged by hindsight, but whether he exercised due care under the circumstances with which he was confronted at the time.

Professor Prosser's *Handbook of the Law of Torts* § 33 (3rd Ed. 1964) states at 171-172:

> " . . . [I]t seems clear that the basis of the special rule [emergency doctrine] is merely that the actor is left no time for thought, or is reasonably so disturbed or excited, that he cannot weigh alternative courses of action, and must make a speedy decision, based very largely upon impulse or guess. Under such conditions, the actor cannot reasonably be held to the same conduct as one who has had full opportunity to reflect, even though it later appears that he made the wrong decision, which no reasonable man could possibly have made after due deliberation. His choice 'may be mistaken and yet prudent.' " (Footnotes omitted).

*See also Effler v. Weber, supra.*

Appellants would have us hold, in essence, that because a vehicle is equipped with a parking brake, the failure of a motorist to use that brake when his foot brakes suddenly fail, is negligence as a matter of law. We decline to do so. We think that Judge Mathias properly denied the appellants' motion for a directed verdict, correctly instructed the jury on the "doctrine of sudden emergency" and rightfully submitted the matter to the jury for its determination of whether Kathleen used reasonable care under the concomitant circumstances.

## IV

Appellants advance the theory "that the jury should not have been instructed that the sudden emergency doctrine was applicable absent proof by the appellee that her vehicle

contained the statutorily required emergency brake equipment." In support of that theory appellants rely upon *Fink v. East Miss. Elec. Power Assn.*, 234 Miss. 221, 105 So. 2d 548 (1958), and *Ritchie v. Davidson*, 183 Neb. 94, 158 N.W.2d 275 (1968). In *Fink* the court held that a driver who was proceeding on a highway behind a truck that suddenly slowed was guilty of negligence as a matter of law when he, realizing that his foot brakes would not stop his vehicle in sufficient time to avoid a collision with the rear of the truck and knowing that he was on a well traveled road, swerved into the path of oncoming traffic and collided head-on with another vehicle. The court noted that the errant driver had three alternatives open to him at the time his brakes failed. They were: (1) turning his vehicle to the right (2) striking the truck or (3) turning to the left into the oncoming traffic. The driver chose the latter "without first ascertaining whether a vehicle was occupying the . . . lane." The Mississippi court concluded that the evidence demonstrated the driver's turning into the oncoming traffic was the proximate cause of the accident. The Court was careful to point out, however, that had the driver turned to the right he could have gone onto the "shoulder of the highway" which "was wide enough to accommodate an automobile." Under Mississippi law it is apparently incumbent upon one claiming refuge behind the sudden emergency rule to show affirmatively that his vehicle was equipped with two separate means to bring the automobile to a stop; that he did not know and by the exercise of reasonable care could not have known that the vehicle's braking system was defective; that when the incident arose he made reasonable efforts to use both braking systems and that both failed, or that upon the sudden failure of the foot brakes he was unable, in the exercise of reasonable effort to stop the car; that he utilized as much care as a reasonably prudent person would use if confronted by similar circumstances.

The case is readily distinguishable from the holdings of the Court of Appeals of this State. No Maryland case that we have been able to find places an affirmative duty upon a defendant to prove that his automobile was equipped with

two separate means to stop his car and that both systems failed. The Legislature has enacted a statute that requires motor vehicles, except motorcycles, to be equipped with foot brakes and parking brakes, Md. Ann. Code Art. $66^{1}/_{2}$, § 12-301. Nothing therein, however, is indicative of a legislative intent that in order to invoke the sudden emergency rule one must show that both sets of brakes failed.

The most distinguishing factor, in our view, between the Maryland decisions and *Fink* is that the Mississippi court has usurped the jury function of fact finder, and decided as a matter of law that the failure to choose the most prudent of the three alternative ways out of the situation that confronted the driver established negligence.

In *Ritchie*, the Supreme Court of Nebraska held that a motorist traveling fifteen to twenty miles per hour, whose foot brakes suddenly failed, was guilty of inexcusable negligence in failing to use the "emergency brake" to stop the car. *Ritchie* is also factually inapposite to the case at bar. Moreover, the Nebraska court was apparently injecting itself into the fact finding process, or at least determining that the distance the striking vehicle was from the struck vehicle when the brakes of the striking vehicle failed, coupled with the rate of speed of the striking vehicle, was as a matter of law negligence.

We are unpersuaded by *Fink v. East Miss. Elec. Power Assn., supra,* and *Ritchie v. Davidson, supra.* As we read *Mintzer v. Miller,* 249 Md. 506, 240 A. 2d 262 (1968), *Wood v. Johnson, supra, Langville v. Glen Burnie Lines,* 233 Md. 181, 195 A. 2d 717 (1963), *Garfinkle v. Birnios, supra, Lehmann v. Johnson,* 218 Md. 343, 146 A. 2d 886 (1958), *Kaplan v. Stein, supra, Sothoron v. West, supra,* and *Currie v. United States,* 201 F. Supp. 414 (D. Md. 1962), *aff'd,* 312 F. 2d 1 (4th Cir. 1963), it is manifest that the Maryland decisions are in accord with a number of her sister states which hold that sudden brake failure is "prima facie evidence of negligence, or is evidence from which an inference of negligence can be drawn. . . ." Annot., 40 A.L.R.3d 9, 40 (1971). Such *prima facie* evidence or inference "must be controverted by a

showing of adequate inspection and sudden unexpected failure." *Wood v. Johnson, supra.* Even those states that hold that a violation of a statute or regulation pertaining to brakes is negligence *per se,* nevertheless, merely shift to the defendant "the burden of going ahead with the evidence to establish excuse or absence of negligence." [2] It would appear that whether one styles the rule prima facie, but rebuttable, or negligence *per se,* but rebuttable, is of no import. In either case proof of the happening of an accident, coupled with the defendant's explanation of sudden brake failure, shifts to the defendant the burden of going forward with the evidence to establish, if he can, the existence of a sudden emergency to which he did not contribute and could not have foreseen.[3]

We decline to hold that failure to use the parking brake, or as it is popularly known, the "emergency brake", in order to avoid a collision when the foot brakes suddenly fail is negligence as a matter of law. Rather, we think that evidence of a failure to use the parking or "emergency brake" is an element for the jury to consider in its deliberations over whether a defendant has exercised due care under the circumstances.

*Judgment affirmed.*

*Costs to be paid by appellants.*

---

**2.** It is difficult to fathom how an act can be negligent per se and at the same time be rebuttable. For cases so holding, however, *see* Annot., 40 A.L.R.3d, *supra* at 43-45.

**3.** Some jurisdictions, California, Colorado, Indiana, Michigan and Vermont, hold that violation of a state statute or regulation governing brakes "creates a presumption of negligence which is rebuttable and may be overcome by evidence of justification or excuse." Annot., 40 A.L.R.3d, *supra* at 41-43.