**Alfia P. CAVALLARO et al.,
Appellants,**

v.

**Roosevelt WILLIAMS.**

No. 75–1348.

United States Court of Appeals,
Third Circuit.

Argued Sept. 18, 1975.

Decided Dec. 8, 1975.

Howard L. Schambelan, Marvin W. Factor, Weinstein & Factor, Philadelphia, Pa., for appellants.

Stanley Frank, Frank & Margolis, Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, and ROSENN and GARTH, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge:

This appeal is from a judgment for the defendant in a diversity action arising out of a rear-end highway collision in Baltimore, Maryland. An automobile driven and owned by defendant Williams struck the rear of an automobile occupied by the plaintiffs, Anthony J. Melchiorre, Alfia P. Cavallaro, and Richard C. Cavallaro, when their car was stopped at the toll plaza of the Baltimore Harbor Tunnel. The occupants of the forward car, all Pennsylvania residents, brought suit against Williams for damages for personal injuries in the United States District Court for Eastern Pennsylvania.[1] The jury, after returning twice for further instructions, found Williams, who claimed that his brakes had suddenly failed to function, not negligent in response to a special interrogatory. The plaintiffs moved for a new trial, contending that the district court erred in its instructions to the jury on the defense of brake failure and on the emergency doctrine and that the verdict was against the law and the weight of the evidence. The district court denied the motion, and plaintiffs appeal. We reverse and remand for a new trial on the ground that the court's instructions to the jury were erroneous.

## I. FACTUAL SETTING

The collision occurred on July 24, 1970, when Williams attempted to apply his brakes as he descended a grade approaching the toll plaza area. He testified that as he applied the brakes, the pedal went down to the floor with no effect. Confronted with this situation, he attempted to avoid collision with other vehicles in the area but nevertheless his automobile struck the concrete traffic island and two automobiles at the toll plaza, one of which was occupied by the plaintiffs.

1. Jurisdiction was based upon 28 U.S.C. § 1332. Plaintiffs are all citizens of Pennsylvania, defendant is a citizen of New York, and the amount in controversy exceeds $10,000.

Williams testified that his automobile had passed New York state inspection two months before the accident. He further testified that, before leaving on the first leg of his trip from New York to Virginia, he had requested a service station attendant in New York to check his automobile, including its brakes. He also stated that prior to his departure from Virginia on the day of the accident, he himself had checked the brake fluid and had found it to be full. Thus, he claimed that the brake failure was a sudden emergency and not due to negligence on his part.

The district court .properly applied Maryland law to this diversity action. This court has recently instructed those district courts which are guided by Pennsylvania conflict-of-law rules in tort actions to apply the "law of the predominantly concerned jurisdiction, measuring the depth and breadth of that concern by the relevant contacts each affected jurisdiction had with the specific transaction." *Suchomajcz v. Hummel Chemical Co.,* 524 F.2d 19, at 23 (3d Cir. 1975). The collision took place in Maryland, and Pennsylvania usually would consider the site of the tort to be the jurisdiction most concerned with the duty of the care owed by an automobile operator to others lawfully on the highway.[2] Thus, we must look to the law of Maryland as it pertains to the defense of sudden brake failure in a suit for personal injuries arising from an automobile accident.

## II. BRAKE FAILURE INSTRUCTIONS

Maryland cases establish that a defense of sudden brake failure indicates prima facie a violation of Article 66½, Annot.Code of Md.Vehicle Laws.[3] If the violation thus shown is found to be the proximate cause of the accident, the then permissible inference of negligence "must be controverted by a showing of adequate inspection and a sudden unexpected failure." *Miller v. Reilly,* 21 Md. App. 465, 319 A.2d 553, 559 (1974), quoting from *Wood v. Johnson,* 242 Md. 446, 219 A.2d 231, 235 (1966); *accord, Currie v. United States,* 201 F.Supp. 414, 417 (D.Md.1962), *aff'd,* 312 F.2d 1 (4th Cir. 1963); *Mintzer v. Miller,* 249 Md. 506, 240 A.2d 262, 264 (1968). This showing by the defendant must be proven by a preponderance of the evidence. *Wood, supra,* 219 A.2d at 235.

The court instructed the jury that Williams, after asserting a defense of brake failure, had the duty to show:

> that he made a skillful and careful inspection and that the defect was of such a nature that it would not have been disclosed by such inspection.

These instructions were taken verbatim from plaintiffs' proposed points for charge and are derived from *Currie v. United States, supra,* 201 F.Supp. at 418.

Plaintiffs were not satisfied with the instructions inasmuch as they did not state that the defendant must show the specific defect which caused the brake failure in order to establish that it would not have been disclosed by a skillful inspection. They contend that the district court erred in failing to instruct the jury that Williams could not prevail in his defense of brake failure absent evidence of the particular mechanical defect which caused the failure.

The Maryland courts have not expressly addressed themselves to the requirement that defendants claiming a defense of sudden brake failure must establish the specific defect which caused the failure. We believe, however, that such a requirement underlies the burden of showing an adequate inspection which

---

2. None of the parties has raised any objection in this court to the application of Maryland law to this case.

3. The pertinent sections of Md.Ann.Code, art. 66½ provide in relevant part:

> Every motor vehicle . . . when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop and hold such vehicle . . . . .

> The service brakes upon any motor vehicle . . . shall be adequate to stop such vehicle . . . when traveling twenty (20) miles per hour within a distance of thirty (30) feet . . . . .
> Under the above conditions the hand brake shall be adequate to stop such vehicle . . . within a distance of fifty-five (55) feet.

has been demanded of defendants by the Maryland cases discussed above.

The important case of *Kaplan v. Stein*, 198 Md. 414, 84 A.2d 81 (1951), set forth the duty of a bailor-owner of an automobile as follows:

[It] then becomes incumbent on the [bailor] to show that the defect was not preventable by any care or skill on his part. This is particularly true where the defect would have been ascertained by a skillful and careful inspection, and the defendant and not the plaintiff were in possession of the automobile until the letting . . . .

*Id.* at 84; *Garfinkle v. Birnios*, 232 Md. 402, 194 A.2d 91, 93 (1963). The court was quoting from an earlier Maryland case which concerned a defective automobile door lock and which suggested that a bailor might escape liability if he could show that "the accident was attributable to a latent defect, which, notwithstanding the exercise of reasonable care, was not discoverable by an examination." *Milestone System Inc. v. Gasior*, 160 Md. 131, 152 A. 810, 812 (Md.1931). If the bailor may escape liability by demonstrating that the accident was attributable to a latent defect not discoverable by an examination, we reasonably may expect that Maryland logically would impose upon him the initial burden of proving the specific defect which caused the brake failure.[4] In fact, in *Milestone System* and *Kaplan*, evidence was offered to establish a causative defect.

In *Currie, supra,* the defendant's evidence as to the cause of a brake failure did not exclude an easily discovered defect of which the defendant had notice. The court pronounced itself unconvinced that the undetectable defect testified to by defendant's expert witness had precipitated the brake failure. It held in the plaintiff's favor since the defendant had not sufficiently met its burden of isolating the causative defect and then proving that it was not discoverable upon proper inspection.[5]

Thus, we conclude that, in order to meet the Maryland requirement of showing an adequate inspection of an automobile's brakes, a defendant must establish first, the particular defect which caused the brake failure and, second, that such a defect was not discoverable by a careful inspection.

If, on remand, it is found to be impossible to ascertain the specific defect which caused the brake failure in the instant case, the district court should determine what legal principles Maryland courts would apply in such a circumstance.

■■■ Plaintiffs also contend that the court held Williams to the standard of a mere driver-bailee under Maryland law because in its opinion it referred to the adequacy of a foot test of the brakes. Whatever the court implied by the reference in its opinion, we note that it did not instruct the jury that a foot test would constitute a proper inspection of the brakes. Since Williams is a driver-owner, we believe that he should be held to a duty more comparable to the duty to which a bailor is held than to that of a driver-bailee. *See Kaplan, supra.*[6] A bailed automobile is considered to be under the control and management of the bailor; an automobile driven only by its owner is similarly under the latter's exclusive control. Therefore, both driver-owner and bailor are charged with the duty of careful inspection and will be liable for any accident caused by breach of that duty. By contrast, the driver-bailee assumes only the minimal duty set forth in *Sothoron v. West*, 180 Md. 539,

---

4. *See* Annot., 40 A.L.R.3d 9 (1971) which discusses the duty to establish a "latent defect" in a brake failure defense.

5. *Currie* was cited with approval in *Mintzer*, 240 A.2d at 264–65 and in *Wood*, 219 A.2d at 235.

6. The *Kaplan* opinion quoted from Restatement of Torts § 388, which outlined the duties of suppliers of chattels, and from another Maryland case, *Milestone System, Inc. v. Gasior*, 232 Md. 402, 152 A. 810 (1931), involving a lessor of an automobile. It relied heavily upon an Eighth Circuit case, *Egan Chevrolet Co. v. Bruner*, 102 F.2d 373 (8th Cir. 1939), which discussed the duty of a dealer in reconditioned trucks to detect and repair defects before selling the trucks to the public.

26 A.2d 16 (1942): to foot-test the brakes before entering a situation in which he will have to rely on them. *Miller, supra,* 319 A.2d at 555–56. An owner who is operating his automobile upon the highway must perform an inspection beyond the foot test required of bailee-drivers.

## III. EMERGENCY DOCTRINE INSTRUCTIONS

The plaintiffs also assign as error the trial judge's instructions on the sudden emergency doctrine. They contend that Williams' alleged failure to prove that the collision was not caused by his negligence (*i. e.,* the absence of evidence establishing a particular causative defect) precludes the court from giving an instruction on the emergency doctrine. They further object to the judge's instruction that defendant's negligence would be "excused" if the jury found the emergency doctrine applicable.

The emergency doctrine excuses a defendant from liability when his actions are taken in response to a sudden emergency for which he is not responsible. *Effler v. Webber,* 18 Md.App. 162, 305 A.2d 485, 488 (1973); *Armstrong v. Johnson Motor Lines, Inc.,* 12 Md.App. 492, 280 A.2d 24, 29 (1971); *Lehmann v. Johnson,* 218 Md. 343, 146 A.2d 886 (1968). The actions in question under this doctrine are those which occurred *after* the defendant became aware of the brake failure. *Wooley v. Uebelhor,* 239 Md. 318, 211 A.2d 302, 306 (1965). They are judged by what is reasonable in the circumstances.

The plaintiffs in the instant case alleged in their complaint that, after Williams lost control of his automobile, it "then, due to the Defendant's carelessness and negligence, came into violent collision with the rear of the said vehicle of the Plaintiff." Thus, defendant's actions in response to the emergency are at issue here,[7] so instructions as to the emergency doctrine were appropriate. The court, however, did not confine its instructions to Williams' alleged negligence after the brake failure. Rather, it set forth two directly conflicting positions which apparently misled and confused the jury. The court stated that if Williams had not satisfactorily rebutted the inference of negligence arising from his brake failure defense (1) that inference could nevertheless be defeated by application of the emergency doctrine if Williams had acted reasonably in the emergency situation created by the brake failure[8] and (2) that inference would preclude the operation of the emergency doctrine because then defendant would be deemed to have created the emergency.[9]

---

**7.** Plaintiffs' counsel, in cross-examination of Mr. Williams and of his wife, asked questions pertaining to Mr. Williams' actions in response to the emergency apparently to establish that he did not downshift or use the emergency brake.

**8.** When the jury returned for further instructions, the court stated:

Now, if you believe, No. 1, he was negligent, and he found himself in an unexpected and sudden emergency, then . . . if you believe he did everything that he could do, and that was reasonable for a person in that position to do what he did, then his negligence would be excused.

If [Williams'] explanation satisfies you that what he did was reasonable and not negligent or, as I mentioned, if he was [in] an emergency, a truly unexpected and sudden emergency, then the negligent finding that the plaintiffs are entitled to will give way and the plaintiffs cannot recover.

**9.** The court's original instructions were as follows:

But an unexpected emergency is an emergency that is truly and genuinely unexpected and something that cannot be prevented by the exercise of reasonable and due care which would include the obligation of drivers in the state of Maryland to make these various inspections and perform the duties under these various statutes [Article 66½]. [I]f he failed to do what those laws required him to do . . . then, even if he was in an emergency, it wouldn't be unexpected under the law . . . .

Instructing the jury after they returned, the court stated:

So you will have to determine if any of the statutes were violated, if so, was Mr. Williams negligent? If so, was that negligence excused because of the emergency situation? It seems to me if he violated the statutes, he can't be said to be in an unexpected emergency.

■ The jury should have been instructed that, if they found that Williams was not negligent in inspecting his automobile, they could then proceed to consider his alleged negligence in responding to the brake failure in light of the emergency doctrine. However, if they found that he had not rebutted the inference of negligence which arose from his brake failure defense, he would be deemed to have created the emergency situation and would not be entitled to the benefit of the emergency doctrine. Instead, no distinction was drawn between his alleged negligence prior to the brake failure and his alleged negligence subsequently so that the jury apparently treated them together.

When the jurors returned a second time to receive explanatory instructions, the foreman stated:

> We interpret your comments to mean that if Mr. Williams, regardless of whether it was a rear-end collision or whatever, exerted all reasonable means to avoid the accident, he would be deemed not negligent.

This comment indicates that the emergency doctrine became the focus of the jury's deliberations on the entire issue of negligence. We have no way of knowing if the jury's finding that Williams was not negligent resulted from the confusing instructions it received on the emergency doctrine. It is sufficient that the instructions could have contributed to that finding.

The judgment for the defendant, Roosevelt Williams, will be reversed and the case remanded for a new trial.

On the jury's second return, the court explained:

The plaintiffs have already made out their case with the inference of negligence, and if there are gaps in that testimony from Mr. Williams that don't satisfy you, those gaps prevent him from having the benefit of the so-called emergency doctrine *making him not negligent.* [Emphasis supplied.]